

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00174-CR

RODERICK BEHAM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 14 F 0004 005

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Carter
Dissenting Opinion by Justice Moseley

*Jack Carter, Justice, Retired, Sitting by Assignment

O P I N I O N

Roderick Beham was convicted of aggravated robbery and sentenced to twenty-five years' imprisonment. On appeal, Beham contends that the trial court erred in: (1) denying his motion to suppress his statements because he invoked his right to counsel and to remain silent; (2) limiting his cross-examination of an accomplice; (3) admitting evidence of extraneous bad acts during the punishment phase without first making a finding that he committed the acts beyond a reasonable doubt; and (4) admitting evidence of extraneous bad acts during the punishment phase because its probative value was substantially outweighed by its unfair prejudice.

We affirm Beham's conviction, but reverse his sentence and remand the case for a new punishment trial.

## I.    Facts

At 10:30 p.m., Arneisha Hall entered the lobby of the Country Inn & Suites hotel in Texarkana, Texas, and asked to use the bathroom. A few minutes later, two masked men entered the lobby, and one of them pointed a gun at Amanda Gardner, the lone clerk, demanding the key to the safe. When Gardner informed them that she did not have the key, the man with the gun took a wallet and gift cards out of the clerk's purse and fled. Several hours later, Hall and Beham walked into the Walmart in Ashdown, Arkansas, where Hall pulled out a wallet that appeared to be the one stolen earlier and tried to use a gift card. According to police testimony, a comparison of video surveillance footage from the hotel and the Ashdown Walmart confirmed that the clothing Beham was wearing at the Walmart matched the clothing of one of the men who robbed the hotel. Beham was identified from the security footage, arrested, and charged with aggravated robbery, a first degree felony. Beham moved to suppress statements he made during an interview with the

police, but the trial court denied his motion, and the audio-recorded statement was played for the jury. At trial, Hall, having pled guilty to similar charges filed against her, testified as an accomplice witness. The jury convicted Beham, and the court sentenced him to twenty-five years' imprisonment.

## II.     Invocation of Right to Counsel

In his first point of error, Beham contends that the trial court should have suppressed the statements he made during his recorded interview with the police because he invoked his right to counsel.

### A.     Standard of Review

We review the trial court's decision to deny Beham's motion to suppress evidence by applying a bifurcated standard of review. *See Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd).

Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

3

While we defer to the trial court's determination of historical facts and credibility, we review de novo its application of the law and its factual determinations not turning on credibility and demeanor. *Carmouche*, 10 S.W.3d at 332; *Guzman*, 955 S.W.2d at 89; *Graves*, 307 S.W.3d at 489. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Beham's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). "[I]n determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing, because the ruling was based on that evidence, rather than evidence introduced later at trial." *Herrara v. State*, 80 S.W.3d 283, 286 (Tex. App.—Texarkana 2000, pet. ref'd).

If a suspect requests counsel at any time during a custodial interview, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994). This secondary *Miranda*[1] right to counsel is "'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Id*. (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1988)). "A suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Id*. However, in the context of invoking the *Miranda* right to counsel, a suspect must do so "unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might*

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

4

be invoking the right to counsel," then an officer is required neither to end the interrogation nor ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights. *Davis*, 512 U.S. at 459.

The United States Supreme Court has observed that a "'statement either is such an assertion [of the right to counsel] or it is not.'" *Smith v. Illinois*, 469 U.S. 91, 97–98 (1984) (quoting *People v. Smith*, 466 N.E.2d 236, 241 (Ill. 1984) (Simon, J., dissenting) (alteration in original)). To unambiguously invoke his right to counsel, a suspect need not "speak with the discrimination of an Oxford don," *Davis*, 512 U.S. at 476 (Souter, J., concurring in judgment), but he "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," *Davis*, 512 U.S. at 459. If the suspect's statement fails to meet that level of clarity, the officers do not have to cease questioning the suspect. *Id.*

**B.      Analysis**

Early in the interrogation, the following conversation between Beham and Detective Billy Giddens occurred:

Beham:  I was gonna try to see if I could get a lawyer.

Giddens:  Okay.

Beham:  My pops told me to get a lawyer -- you get a lawyer for me.

Giddens:  Okay, so you don't want to talk?

Beham:  Aaahh, I [unintelligble] want to talk to the lawyer and see what's going on.

Giddens:  Okay. So you don't even know why I'm here then, huh?

5

Beham: Yea, they said that -- that you had to talk to me about something.

Giddens: Okay.

Beham: -- bout, bout something, about uh, about the girl that I was with at the uh, Walmart.

Giddens: Mmhmm. Do you want to talk about that?

Beham said he dropped the girl off in Texarkana, and Giddens said, "Well, I'm kind of in a bind here. Either we want to discuss it or we don't. Like I said, if it gets too hot on you, you can shut her down, man -- is what I'm talking about." Beham hesitated and then said, "I'll see what you got to say first." Beham signed a statement acknowledging his rights and later confessed to his involvement in the robbery.

In his motion to suppress his recorded statement, Beham argued that he unambiguously invoked his right to counsel. After reviewing the recorded interview, the trial court denied Beham's motion and found that Beham did not clearly and unambiguously invoke his right to counsel.

In *Davis*, the defendant stated, "Maybe I should talk to a lawyer," and the United States Supreme Court found that this statement was not an unambiguous request for counsel. *Id*. at 462. The Texas Court of Criminal Appeals has likewise required an unambiguous assertion of the right to counsel. *Davis v. State*, 313 S.W.3d 317, 334 (Tex. Crim. App. 2010) (defendant's statement during police interview—"I should have an attorney."—did not expressly invoke right to counsel). Here, the trial court found that there was "no unambiguous request for an attorney."

We are to evaluate whether Beham's right to counsel was invoked based on the totality of the circumstances surrounding the statement. *See id.* at 339. Here, Beham signed a document

6

stating that he understood and waived his rights, including his right to counsel. A review of the recorded interview fails to reveal an unambiguous request for counsel. Beham's first statement, that he was "gonna try to see if [he] could get a lawyer" fails to definitively request counsel. In his second statement, he said, "Aaahh, I [unintelligible] want to talk to the lawyer and see what's going on." However, the unintelligible word or words could have been any number of different words, and because the statement is open to two or more reasonable interpretations, it is ambiguous. When Giddens again asked whether Beham wanted to talk, reminding him that he could terminate the interview at any time, rather than clearly invoking his right to counsel, Beham said he would see what Giddens had to say first.

Based on precedent from the United States Supreme Court and the Texas Court of Criminal Appeals, we find that Beham did not clearly and unambiguously invoke his right to counsel and that a reasonable officer in light of the circumstances would have understood only that Beham "might be invoking the right to counsel." *See Davis*, 512 U.S. at 459. Therefore, the trial court properly denied Beham's motion to suppress, and we overrule this point of error.

## III. Invocation of Right to Remain Silent

In his second point of error, Beham contends that the trial court should have suppressed the statements he made during his interview with the police because he invoked his right to remain silent "at the outset of the interview," even though Beham signed a document stating that he understood and waived his rights, including his right to remain silent.

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473–74; *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. A suspect's exercise of his rights must be "fully

7

honored." *Miranda*, 384 U.S. at 467. The right to cut off questioning is among the procedural safeguards that must be fully honored. *Watson v. State*, 762 S.W.2d 591, 596 (Tex. Crim. App. 1988). "A law enforcement officer may not continue to question the suspect until the officer succeeds in persuading the suspect to change his mind and talk." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996); *see also Mayes v. State*, 8 S.W.3d 354, 360 (Tex. App.—Amarillo 1999, no pet.).

"If a statement is governed by *Miranda* (i.e. the suspect is in custody), then a failure to cut off questioning after a suspect invokes his right to remain silent violates his rights and renders any subsequently obtained statements inadmissible." *Dowthitt*, 931 S.W.2d at 257. "But, an officer need not stop his questioning unless the suspect's invocation of rights is unambiguous, and the officer is not required to clarify ambiguous remarks." *Id*. The suspect's comments must "clearly manifest his desire to remain silent." *Mayes*, 8 S.W.3d at 358. The totality of circumstances surrounding the interrogation and alleged invocation must illustrate that the suspect actually invoked his right. *See Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995).

Here, Giddens read Beham his *Miranda* warnings at the outset of the interview. Several times in the course of the interview, Giddens reminded Beham that he could end the interview at any time, and Giddens repeatedly asked Beham whether he wanted to talk about the case. Rather than ending the interview, remaining silent, or otherwise invoking his right to remain silent, Beham continued speaking with Giddens. We find that the totality of the circumstances surrounding the interrogation/interview indicate that Beham, even after being given the *Miranda* warnings in both oral and written form, freely and repeatedly spoke with Giddens and never unambiguously invoked

his rights to remain silent or to terminate the interview. Accordingly, the trial court properly denied Beham's motion to suppress, and we overrule this point of error.

## IV.      Limiting Beham's Cross-Examination of Hall

At trial, Arneisha Hall testified against Beham as an accomplice witness. During Beham's cross-examination of Hall, she admitted that at the time of the robbery, she was on community supervision for a weapons charge, but the trial court sustained the State's objection to the question and instructed the jury to disregard Hall's answer. In his third point of error, Beham contends that the trial court violated his right to confront the witnesses against him by improperly limiting his cross-examination of Hall regarding possible bias against Beham.

At trial, the following exchange occurred between Beham and Hall:

> Q      [Counsel for Beham] Okay. And Ms. Hall, at the time this robbery happened, you were on probation, weren't you, ma'am?
>
> A      [Witness Hall] Yes, sir.
>
> Q      And you were on probation for weapons charges, correct?
>
> A      Yes, sir.

The State objected and argued that Beham could not use the crime to impeach Hall because (1) the crime was not a crime of moral turpitude, (2) the crime was "outside the rule," (3) Hall did not claim to have a clean criminal record, and (4) Hall was testifying in prison clothes and shackles. Beham countered, "Your Honor, it's a weapons charge. It's related to this offense. The fact that she was gone on probation and has an opportunity to go to her probation officer and tell him what happened, I think it's important, I think it's relevant." The trial court sustained the State's objection and instructed the jury to disregard Hall's "last answer."

9

## A.    Preservation

Initially, the State contends that Beham failed to preserve this error because he failed to make an offer of proof.  In order to preserve alleged error for appellate review, a party must make a timely objection to the trial court or make some request or motion apprising the trial court what the party seeks by the line of questioning, thereby giving the trial court an opportunity to remedy any purported error.  *See* TEX. R. APP. P. 33.1(a).  Failure to object to a Confrontation Clause error at trial waives the complaint on appeal.  *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (objection on hearsay and Rule 107 grounds did not preserve Confrontation Clause complaint); *see also Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that failure to articulate "that the Confrontation Clause demanded admission of the evidence" foreclosed trial court's opportunity to rule on that issue and resulted in waiver of issue on appeal. In order to preserve error regarding improperly excluded evidence, a party must (1) timely object, (2) either obtain a ruling from the trial court or object to the trial court's refusal to rule, and (3) establish the substance of the excluded evidence via an offer of proof.  *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a),[2] 60 TEX. B.J. 1129, 1130 (1997); *Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007).  An explicit objection is not necessary if "the specific grounds" of the complaint are "apparent from the context" of the trial proceeding.  TEX. R. APP. P. 33.1(a)(1).

---

[2]The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and the Texas Court of Criminal Appeals, effective April 1, 2015.  The Texas Rules of Evidence cited in this opinion are the Rules in effect in June 2014, when this case was tried.  To facilitate access to the text of the June 2014 version of the Rules, each citation to the Texas Rules of Evidence will be followed by a citation to the volume and page of the Texas Bar Journal in which the June 2014 version of the cited Rules first appeared.

Here, Beham asked Hall whether, at the time of the robbery, she was on probation for a weapons charge, and Hall answered, "Yes." An objection was sustained to this question, and the trial court instructed the jury to disregard the answer. Beham preserved the issue for our review.

**B.      Analysis**

Generally, parties are entitled "to show any relevant fact which would or might tend to establish ill feeling, bias, motive, interest or animus on the part of any witness testifying against him." *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The right to confrontation includes the right to cross-examine witnesses. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (citing *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). Further, this right includes the opportunity to cross-examine to show that a witness is biased or that his testimony is exaggerated or unbelievable. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). However, the scope of this right is not unlimited; the trial court has "wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 145 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Thus, a defendant's right to cross-examine a witness concerning potential bias or prejudice does not include the right to cross-examine that witness in whatever manner and to whatever extent the defendant chooses. *Id.*

"Evidence that a witness is on [community supervision], is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent

11

some plausible connection between that fact and the witness's testimony." *Id*. at 149. To impeach a witness with evidence of pending criminal actions, the proponent of the evidence must first establish that the evidence is relevant. *See Carroll*, 916 S.W.2d at 499–501; *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). The proponent of the evidence "must establish some causal connection or logical relationship between the pending charges and the witness' 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Carpenter*, 979 S.W.2d at 634. In *Carpenter*, the Texas Court of Criminal Appeals suggested at least one type of evidence that might show a causal connection or logical relationship—evidence regarding the existence of a plea agreement or negotiations, or testimony showing the witness' belief regarding the existence or non-existence of any kind of deal in the pending matter. *Id*. at 635 n.5.

The record in this case fails to establish a causal connection or logical relationship between Hall being on community supervision for a weapons charge and her trial testimony. There is nothing in the record to show the existence of, or the expectation of, a deal or other favorable treatment regarding Hall's community supervision status. The fact that Hall was on community supervision for a weapons charge coupled with the fact that this case involved a gun is not sufficient, by itself, to establish the requisite link between Hall's community supervision and her testimony in this case. *See Irby*, 327 S.W.3d at 140, 151–52. Therefore, the trial court was within its discretion to grant the State's objection and exclude the testimony. We overrule this point of error.

12

## V. Admission of Evidence of Extraneous Bad Acts Without First Finding Beyond a Reasonable Doubt that Beham Committed the Acts

In his fourth point of error, Beham argues that the trial court erred by admitting evidence of extraneous bad acts during the punishment phase of the trial without finding beyond a reasonable doubt that Beham committed the acts. The State argues that such evidence of extraneous offenses was admissible by reason of Article 37.07, Section 3(a)(1).

Section 3(a)(1) of Article 37.07 of the Texas Code of Criminal Procedure, which governs the admissibility of evidence at punishment in all non-capital cases, provides,

> Regardless of the plea and whether the punishment be assessed by the judge or jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014).[3] The trial court bears the responsibility to determine threshold issues of admissibility while the jury maintains the power to decide whether the State has met its burden of proof. *See Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.—San Antonio 1999, no pet.). The trial court's determination is an initial determination of whether the extraneous offense is relevant. *Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.). The

---

[3]The State does not argue that the evidence is a part of the "criminal record" of Beham, but only that it is evidence of an extraneous offense. We agree that is the proper analysis. If the evidence is a part of the "criminal record" of the defendant and is a conviction, the conviction must be properly proved, but since final convictions have undergone judicial testing, it is not necessary that proof of guilt beyond a reasonable doubt be again presented at the punishment stage. *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

determination by the trial court is not that the State has proved the extraneous offense beyond a reasonable doubt, "but is instead a finding that sufficient evidence exists from which a jury could reasonably so find." *Arzaga*, 86 S.W.3d at 781 (citing *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)).

At trial, the State sought to elicit testimony from Detective Giddens that Beham had "at least four contacts" with law enforcement prior to the present offense, including three offenses in Shelby County, Tennessee—an arrest for unlawful possession of a weapon as well as juvenile charges for aggravated burglary and theft of property over $1,000.00, though the juvenile charges were later dismissed.[4]  Beham objected, and on voir dire examination, Giddens admitted that he had personal knowledge of neither the extraneous acts themselves nor Beham's contacts with the police occurring prior to the events of this case.  Beham then objected to the State's intended testimony, arguing that as Giddens had no personal knowledge of the alleged bad acts, the testimony was hearsay and would violate Rule 403 of the Texas Rules of Evidence and the Confrontation Clause.  The objections were overruled.

"The point of error on appeal must correspond or comport with the objection made at trial." *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g)).  "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Id.*;

---

[4]During punishment, the trial court may admit evidence of "any matter the court deems relevant to sentencing," including the defendant's prior criminal record and evidence of extraneous crimes or bad acts, but only if there is sufficient proof to find beyond a reasonable doubt that the defendant committed that crime or bad act.  TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).  Here, the State did not even attempt to produce competent proof that Beham was convicted of unlawful possession of a weapon, and the State conceded that the Tennessee charges for aggravated burglary and theft were dismissed.  While it is not required to show that a defendant was convicted, the State did not attempt to present evidence that Beham committed acts constituting a criminal offense in Tennessee.

14

*see* TEX. R. APP. P. 33.1; *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). At trial, Beham only objected on the grounds of hearsay under Rule 403 and the Confrontation Clause.[5] Because Beham failed to raise an objection under Article 37.07 at trial, we find that Beham has failed to preserve this issue for appellate review.

## VI. Relevancy Under Rule 403 of the Texas Rules of Evidence

In his final point of error, Beham contends that the trial court erred by admitting the extraneous-offense evidence because the danger of unfair prejudice from the extraneous-offense evidence substantially outweighed the evidence's probative value.

The decision of the trial court to admit extraneous offenses during the punishment phase is reviewed under the abuse of discretion standard. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Wilder v. State*, 111 S.W.3d 249, 255 (Tex. App.—Texarkana 2003, pet. ref'd). As a reviewing court, we will not reverse a trial court's decision to admit or exclude evidence absent a showing that the lower court abused its discretion. If the trial court's decision falls within the zone of reasonable disagreement, that decision will not be disturbed. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

The purpose of a punishment proceeding is not to prove guilt, but instead to allow a jury to assess punishment in line with the objectives of the Texas Penal Code. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); *see* TEX. PENAL CODE ANN. § 1.02(1) (West 2011). The test for relevancy is much broader during the punishment phase because it allows a jury to consider

---

[5]The trial court specifically asked Beham, "So your objection is 403, your objection is confrontation clause and hearsay?" and Beham's counsel answered, "Yes, sir."

more evidence in exercising its discretion to assess punishment within the appropriate range. *See Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (op. on reh'g), *superseded by statute on other grounds*, Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (eff. Sept. 1, 1989) (amended 1990, 1993, 1995, 1996, 1997, 1999, 2001, 2005, 2007, 2011, 2013) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2014)). The Texas Court of Criminal Appeals has held that

> What is "relevant" to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." Importantly, we have held that when a defendant applies for community supervision (as the appellant did), the trial court may reasonably deem any character trait that pertains to the defendant's suitability for community supervision to be a relevant matter for the sentencer to consider.

*Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (citations omitted).[6]

Beham contends the testimony should have been excluded pursuant to Rule 403 of the Texas Rules of Evidence, which allows relevant evidence to be excluded, *inter alia*, if its probative value is substantially outweighed by the danger of unfair prejudice. "'[U]nfair prejudice' refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Erazo v. State*, 144 S.W.3d 487, 501–02 (Tex. Crim. App. 2004) (Cochran, J., concurring) (quoting *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)); *accord Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Although a trial court possesses wide latitude in determining the admissibility of evidence presented at the punishment phase of

---

[6]Beham filed an application for community supervision in this case.

16

trial, admitted evidence must satisfy Rule 403, even if the evidence is otherwise admissible or admitted under Article 37.07. *See Rogers*, 991 S.W.2d at 266–67.

A Rule 403 objection requires that the trial court balance the probative value of the evidence against its potentially prejudicial effect. *Montgomery*, 810 S.W.2d at 388–90. "In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion.'" *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 389). "Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id.* (internal quotation marks omitted). It is therefore the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

As stated in *Flores v. State*, 440 S.W.3d 180,

A Rule 403 balancing test includes, but is not limited to, four factors: (1) the probative value of the evidence, or how compellingly the extraneous[-]offense evidence serves to make a fact of consequence more or less probable; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.

*Flores v. State*, 440 S.W.3d 180, 199–200 (Tex. App.—Houston [14th Dist.] 2013), *vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim. App. 2014) (citing *Mozon*, 991 S.W.2d at 847; *see Montgomery*, 810 S.W.2d at 389–90; *see also Sunbury v. State*, 88 S.W.3d 229, 235 (Tex. Crim. App. 2002)).

17

Here, the trial court performed the following Rule 403 analysis:

> In evaluating those factors, it appears to me that the danger of unfair prejudice does not substantially outweigh the probative value. In this -- number one, it's the punishment phase. As Counsel has indicated, under Article 37.07, extraneous offenses are admissible. The information demonstrates that it was a charge and that it was dismissed. It's not going to require any extraordinary time, amount of time to develop the evidence. And I don't find that the state has a tremendous amount of evidence so that the need for it would not be great, so I'm going to overrule the defendant's objections . . . .

We must measure the trial court's ruling to admit Giddens' testimony "against the relevant criteria by which a Rule 403 decision is made." *See Mozon*, 991 S.W.2d at 847. With regard to the first factor, the probative value of the disputed "contact with law enforcement" evidence is low, if existent at all, because the record establishes and the State conceded that the Tennessee charges for aggravated burglary and theft were dismissed and because no attempt was made to present evidence of the underlying facts, which might have shown that Beham committed these acts. Clearly, the charges were not evidence of either a conviction or an adjudication of guilt. Further, the State failed to produce evidence from which a trier of fact could find beyond a reasonable doubt that Beham committed the offense of unlawful possession of a weapon.[7] Whereas final convictions or adjudications have great probative value, allegations and charges with no substantiation have very little probative value. We find this factor to be of importance in this analysis.

The second factor also weighs against admission because there is a significant potential for the evidence to impress the jury in an irrational but indelible way. While a person's criminal

---

[7]It is axiomatic that an arrest, indictment, or other instigation of criminal charges is no evidence of guilt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.03 (West Supp. 2014); *Bell v. State*, 724 S.W.2d 780, 799–800 (Tex. Crim. App. 1986).

18

history is undoubtedly a relevant factor for a jury to consider when assessing a sentence because it relates to the defendant's character, to be probative and relevant, there must be evidence that the defendant committed the extraneous acts. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also Sims*, 273 S.W.3d 295; *Fowler v. State*, 126 S.W.3d 307, 310 (Tex. App.—Beaumont 2004, no pet.); *Lujan v. State*, 626 S.W.2d 854, 864 (Tex. App.—San Antonio 1981, pet. ref'd). Any prior offense serves to prejudice the defendant, but that prejudice is unfair when, as in this case, the State fails to produce evidence that Beham committed the alleged acts. While the State properly presented a conviction for misdemeanor theft between $50.00 and $500.00, that offense occurred in 2013. The Tennessee offenses, by way of contrast, allegedly occurred three years earlier, thereby creating the unfair potential for the jury to believe Beham's "criminal history" was both longer and more violent than the evidence would otherwise indicate. Further, the two juvenile charges in Tennessee, aggravated robbery and theft of property over $1,000.00, are very similar to the charges for which the jury had just found Beham guilty

The third factor favors admission, as the State did not require much to develop the evidence. In regards to the fourth factor, during the punishment hearing, the State produced testimony and other evidence that while in jail awaiting trial in this case, Beham committed unlawful contact with a jailor, sexual misconduct, theft, and assault. Therefore, the State had no great need for the disputed extraneous-offense evidence to support its argument that Beham was a violent, noncompliant person who deserved a harsh sentence.

Based on our evaluation of the Rule 403 balancing factors, we conclude that the trial court's decision to admit the evidence over Beham's objection was outside the scope of reasonable disagreement. Without evidence of adjudication or testimony regarding the circumstances of the

19

Tennessee arrests, the evidence held little, if any, probative value. The evidence that Beham was previously arrested for a violent crime similar to the present offense, without more, raises the danger of unfair prejudice far above the evidence's meager probative value. Accordingly, we find that the record firmly establishes that the danger of unfair prejudice inherent in the extraneous-offense evidence—the "contact with police" evidence—substantially outweighed the evidence's probative value.

Having determined that the evidence was erroneously admitted, we must now decide whether the admission of this evidence was so harmful as to require a new trial. The erroneous admission of extraneous-offense evidence is not constitutional error. *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007)). Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nonconstitutional error is not grounds for reversal if, "'after examining the record as a whole,'" there is "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

> In assessing the likelihood that the jury's decision was adversely affected by the error, we
>
> > consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider

the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Haley v. State*, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005) (citations omitted); *see also Motilla*, 78 S.W.3d at 355–56 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

Here, Beham was charged with aggravated robbery, a first degree felony carrying a possible life sentence. The video recordings from the hotel and Walmart, along with Beham's recorded statements and the testimony of Hall and Gardner, established that Beham entered the hotel, pointed a gun at Gardner, demanded the key to the safe, stole her wallet and gift cards, and left the hotel. A few hours later, he and Hall entered the Walmart where Hall displayed a wallet Gardner identified as hers, and Hall attempted to use a stolen gift card.

During the punishment phase, Giddens testified that after researching Beham's criminal records, he discovered that Beham was convicted for misdemeanor theft of property in Harris County, Texas,[8] and he was arrested and charged in Shelby County, Tennessee, for unlawful possession of a weapon, theft, and aggravated burglary. Giddens admitted that Beham was not convicted of the three Tennessee charges and that the charges were dismissed for the latter two offenses.

Beham's Facebook page included several photographs of himself. One photograph depicted Beham sitting on the hood of a car while holding a gun. Another photograph showed Beham sitting at a table that is covered with cash and several baggies of what appears to be marihuana. Giddens testified on cross-examination that Beham told him that the gun was fake,

---

[8]The offense was theft of over $50.00 but less than $500.00, and Beham was placed on deferred adjudication community supervision, but Beham was later adjudicated guilty and sentenced to ten days in jail.

21

but that he did not know it at the time. In Giddens' opinion, the gun used in the hotel robbery was real.

Shane Kirkland, a detective with the Texarkana, Arkansas Police Department with years of experience as a gang investigator, testified that in several of Beham's Facebook photographs, he is shown making known gang signs with his hands and wearing a lot of red, a color associated with the Bloods street gang. It was Kirkland's opinion that based solely on the Facebook photographs, Beham was holding himself out as a gang member, though he admitted that he had no knowledge or information that Beham was in a gang in the Texarkana area or participating in gang-related activity in the area.

Spencer Price, a crime scene technician with the Texarkana, Texas Police Department, confirmed that Beham was the same person convicted in Harris County of theft of over $50.00 but less than $500.00, a class B misdemeanor. He characterized that offense as a shoplifting case. Price testified that Beham was placed on deferred adjudication community supervision and stated that if Beham had successfully completed and complied with the terms and conditions of that community supervision, the charge against him would have been dismissed. Finally, Price testified that Beham failed to comply with the terms and conditions of his community supervision and that he was later adjudicated guilty and sentenced to ten days in jail.

Several of the corrections officers at the LaSalle Correctional Facility where Beham was incarcerated awaiting trial testified regarding Beham's behavior while in jail. David Bennett testified that on March 16, 2014, Beham tried to pat Bennett down, thereby violating the jail's policies and procedures against contact with jailers. Beham was found guilty of the infraction and apologized for the contact, and Bennett admitted that this was a minor infraction that did not, in

22

Bennett's opinion, seriously endanger anyone. Dennis Jones, another correction facility employee, testified that on April 5, 2014, while he conducted a safety check of Beham's cell, Beham committed sexual misconduct, which is a major violation of jail policy.[9] After being found guilty of the infraction, Beham was placed in administrative segregation, similar to solitary confinement, and lost his commissary and visitation privileges for thirty days. Alberto Cantu, another LaSalle employee, testified that on August 7, 2014, Beham was caught stealing food from the kitchen. Cantu testified that while taking the food was a minor offense, offenders having contraband can lead to fights among the prisoners. LaSalle employee Brandon Sumber testified that while another prisoner was on the telephone, Beham punched him in the face, giving him a swollen eye. A photograph of the other prisoner taken after the punching incident was admitted into evidence. Sumber testified that this was a major infraction of jail rules and that as a result of Beham's repeated behavioral problems, he was placed in administrative segregation. Sumber admitted that when approached by officers after the punching incident, Beham immediately put his hands behind his back to be restrained.

The victim-impact testimony from Gardner was strong. Gardner testified that since the robbery, she feels afraid all the time, and particularly when she goes to work. She stated that she has become more nervous and prone to panic and that she has had to work with someone else for the first few hours of her shifts to let her nerves settle down before she can be left alone at work. Gardner also testified that she had to move back home with her parents because she was scared to sleep alone in her own home. Finally, she stated that she has had trouble sleeping since the incident and that when she does sleep, she suffers from nightmares.

---

[9]The details of Beham's actions were not presented to the jury.

DeAngelo Westley, Beham's brother-in-law,[10] testified that he knew Beham well. Beham briefly stayed at Westley's house in Ashdown while on his way to see his mother in Memphis. Though Beham had a job in Houston, Westley was trying to get Beham a job in the Ashdown area. Around the time of the robbery, Westley and Gloria were having financial problems and were behind on their rent. Westley characterized Beham as a "good person" who would do anything to help someone else. Without Westley asking, Beham would buy things for Westley's children and send Westley money to help pay the bills. He had never known Beham to sell illegal drugs or get involved in gang activity.

Gloria described Beham as a "good person" who "gives before he even receives," and "a really good person at heart." Because she, her husband, and their two young children were struggling financially, it was common for Beham to give her family money, just "like thirty or forty dollars here and there, whatever he had basically." She testified that she and Beham were two of five children that grew up in a poor, one-parent household. Gloria testified that throughout their childhood, there were times they went without electricity and food. She testified that Child Protective Services removed her siblings and her from their mother's care and placed her, first in a "children's home," and later with her grandmother, but that due to Beham having attention deficit disorder or attention deficit hyperactivity disorder, along with a bad temper, he was allowed to stay with their mother.

During punishment, Beham argued that this offense was an isolated incident—a young man's stupid decision. In asking for community supervision, Beham acknowledged that this was

---

[10]There is conflicting information in the record regarding whether Westley and Gloria Beham, Beham's sister, are married.

a very serious crime for which he took full responsibility.  In opposition, the State, argued that this offense, when viewed in light of the Tennessee arrests, the Harris County shoplifting adjudication, and Beham's behavior while incarcerated, formed a pattern of intentional behavior.

It is worth noting here that the disputed evidence extended, by several years, the length and severity of Beham's perceived criminal history.  The nature of the evidence and the similarity of the offenses to the underlying crime in this case made it appear that Beham had a habit of committing armed robbery and theft.

Furthermore, despite the State's earlier admission that the Tennessee charges for aggravated burglary and theft were dismissed, the State emphasized those extraneous acts in its closing arguments by raising and then mischaracterizing them in its first substantive comments concerning the case:

> [THE STATE]:  . . . . Now it was pretty clear from yesterday that the defense was trying to paint him in a very different light than the state did.  What you heard from the defense witnesses was that Roderick Beham is a good person.  Well, here he is with a gun flashing gang signs.  You heard that he's hard-working and you heard that he gives before he receives.  Well, here's where he committed aggravated robbery -- or aggravated burglary and theft of property in Shelby County, Tennessee.  That's --.
>
> [BEHAM'S COUNSEL]:  We'd object.  That assumes facts not in evidence, Your Honor.
>
> THE COURT:  Overruled.
>
> [THE STATE]:  Here's where he was convicted of theft in Harris County and now you've convicted him of aggravated robbery.  Sounds to me like he's a thief, that he doesn't give, but he takes.  Over and over and over again.

There was no evidence that Beham had previously "committed aggravated robbery -- or aggravated burglary and theft of property in Shelby County, Tennessee."  Instead, the evidence

showed a previous charge for these allegations and that the charges were dismissed. By this argument, the State told the jury that this non-probative evidence should be elevated to the highly probative status of a prior conviction, thereby proving that Beham continues to commit the same crimes "[o]ver and over and over again." We find this improper emphasis by the State to be particularly important in our consideration of the prejudicial effect of the improperly submitted evidence in this case because it allowed the State not only to argue that this was a pattern of behavior by Beham, but also to directly refute Beham's contention that this was an isolated incident. Based on the foregoing and having examined the record as a whole, we find no fair assurance that the error had slight or no effect on the jury's punishment decision. *See Motilla* 78 S.W.3d at 355.

Therefore, we sustain this point of error.

We affirm Beham's conviction, but reverse his sentence and remand the case to the trial court for a new trial on punishment.

Jack Carter
Justice

DISSENTING OPINION

The task of attempting to gauge the prejudicial effect of inadmissible evidence on a jury is a mercurial and indistinct obligation. In this situation, we have determined that although there were good and proper objections available to Roderick Beham pursuant to Article 37.07 of the Texas Code of Criminal Procedure[11] to bar the admission of the evidence of the Tennessee charges lodged against him as a juvenile, we have also determined that Beham failed to raise those proper objections, thereby not preserving them for appeal. The only objection preserved by Beham that we are allowed to review is that based on Rule 403 of the Texas Rules of Evidence, a Rule that bars evidence which is more prejudicial than probative. *See* TEX. R. EVID. 403, 60 TEX. B.J. 1129, 1134 (1997). If Beham had not mentioned an objection under Rule 403, it is conceivable that the jury could have considered this evidence and that Beham would have had no reversible complaint on appeal. Under the balancing test we are supposed to employ in assessing a Rule 403 objection, the first factor is a determination of the probative value of evidence which was proffered and allowed into evidence by the trial judge. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). If no other proper objection is otherwise raised to the admissibility of evidence and the evidence is permitted to be introduced, does the evidence itself have absolutely no probative value upon which the jury can rely? If we determine that Beham failed to preserve his objection under Article 37.07, when we determine that it is tainted or questionable evidence for the purpose of a Rule 403 analysis, do we not implicitly grant a backdoor objection to the admissibility of that same evidence when the objection has not been preserved for appeal?

_____

[11]*See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2014).

27

Rather than engaging in efforts to answer more esoteric questions than the ones posed above, I have attempted to discern what might have gone on in the minds of the jurors in the Beham case when determining his punishment. There is no scientific or entirely logical way for one person to quantify the thought process of another, even if both people simultaneously view the same thing under the same circumstance. The problem in this case is that the crime of which Beham was convicted is a first degree felony and carries with it a potential penalty of imprisonment from five to ninety-nine years or life imprisonment, plus a fine of up to $10,000.00. *See* TEX. PENAL CODE ANN. §§ 29.03(b), 12.32 (West 2011). Here, the jury determined that twenty-five years' imprisonment (and no fine) was appropriate. Conducting a very non-scientific study of fairly recent reported cases of aggravated robbery across the State reveals that the very low end of the sentences meted out by courts was ten to fifteen years' imprisonment. These are extraordinary. The penalties given to the apparently truly "bad" offenders (such as those who are repeat offenders or those whose activities during the aggravated robberies caused death, massive injuries, or extreme fright on the part of the victims) seemed to range in the punishment range of forty years to ninety-nine years' imprisonment. These are likewise fairly rare. More commonly, people convicted of their first such offense where no one was injured and there was no compounding circumstance that would uncommonly inflame the passions of the jurors (such as a home invasion scenario), were generally meted out sentences in the same range as that given to Beham in this case. Had Beham received a fifteen-year sentence, I would have no problem in saying that the introduction of the Tennessee arrest had virtually no impact on the punishment phase of the trial. On the other hand, if the jury had returned with a sentence of thirty-five years, I believe that this would be fair assurance that the jury had been strongly impacted by that evidence. In other words,

28

it does not appear that Beham received a sentence which was more than would ordinarily have been handed down by a jury that did not hear the evidence of the charges against Beham in Tennessee. After all, I think that almost any jury that is made aware that a robber waved a pistol around at a victim (certainly scaring the bejabbers out of the victim and very likely inviting disaster) should certainly get more than a wrist slap.

Our system has traditionally placed a great deal of trust in the wisdom of juries.[12] Simultaneously with the introduction of the evidence of the charges that were lodged against Beham in Tennessee, there was also evidence that those charges had been dismissed. Who are we to determine that when the jurors heard the State talk about repeated offenses going back many years, the jurors were not mulling over the fact that the dismissal might just well have proved that Beham had been unjustly charged? Which jurors considered the argument of the State regarding the importance of that evidence to be total balderdash?

We have no way to poll the jury to ask the members what weight they placed on the tainted and unusable evidence of the Tennessee arrest; likewise, the trial court had no way to determine that at the time of trial. Looking at the outcome of the trial retrospectively, the length of the sentence given to Beham by the jurors suggests that the trial court would have been justified in believing that the evidence had, at most, only a slight effect on their decision.

---

[12]In years past, the courts even deferred to the "wisdom of the jury" in defining what was meant by the word "promiscuous." *Johnson v. State*, 933 S.W.2d 195, 201 (Tex. App.—Waco 1996, pet. ref'd).

I respectfully dissent.


Bailey C. Moseley
Justice

Date Submitted:     August 18, 2015
Date Decided:       September 18, 2015

Publish