

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00042-CR

RICHARD DARBY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 14-F-00098-102

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Carter

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Richard Taylor Darby, III, pled guilty to and was convicted of evading arrest with a motor vehicle. Following a jury trial on the issue of punishment, Darby was sentenced to ten years' imprisonment and ordered to pay a $10,000.00 fine. On appeal,[1] Darby argues (1) that the trial court erred in admitting evidence under Article 37.07 that he committed two unadjudicated sexual assaults because the State did not prove the extraneous offenses beyond a reasonable doubt, (2) that the trial court erred in admitting these unadjudicated offenses during punishment over his Rule 403 objection, (3) that the trial court erred in admitting jailhouse recordings of a conversation between Darby and his father discussing escape, and (4) that his conviction for evading arrest with a motor vehicle should have been classified as a state jail felony instead of a third degree felony.

We find that the trial court did not abuse its discretion in admitting evidence of either the unadjudicated sexual assault offenses or the jailhouse recording. We also find that Darby's conviction for evading arrest with a motor vehicle was a third degree felony. Thus, we overrule Darby's points of error. However, we find that the trial court's judgment requires modification to reflect Darby's proper name. Consequently, we affirm the trial court's judgment, as modified.

I. **The Jury Hears Punishment Evidence Supporting Darby's Convictions**

The evidence at trial established that Darby was a good child who was raised in a decent home by his single father, Richard Taylor Darby, Jr. Yet, in spite of his father's efforts to keep

---

[1]Darby also appeals from the following convictions entered on the same date: aggravated robbery (our cause number 06-15-00043-CR); aggravated robbery (our cause number 06-15-00044-CR); theft in an amount valued at $1,500.00 or more but less than $20,000.00 (our cause number 06-15-00045-CR); and aggravated robbery (our cause number 06-15-00046-CR). Darby pled guilty to all of the charges against him, and his cases were consolidated for trial on punishment. We briefly discuss the facts giving rise to all of Darby's convictions in this opinion.

him from harm, Darby and his best friend, Cody Krause, became addicted to drugs at a young age. Darby began smoking marihuana in the seventh grade, started drinking alcohol in the ninth grade, and eventually began ingesting pain medication. When he started playing football in high school, Darby switched to synthetic marihuana to avoid testing positive for drugs. Darby told the jury that he moved in with Krause and began using methamphetamine after his grandmother passed away.

Darby readily admitted that he committed several crimes while under the influence of drugs in order to support his addiction. First, he stole an all-terrain vehicle valued at "close to $7500" from Robert Murry and sold it for an "eight-ball" of methamphetamine.[2] Next, with Krause's assistance as the getaway driver, Darby testified that he collected $300.00 or $400.00 from his armed robbery of a Shell gas station located in Texarkana, Texas.[3] One week later, after he and Krause ran out of the drugs they had purchased, Darby stole his own father's car and a Derringer pistol that belonged to his grandmother. Using these items, Darby committed an armed robbery of a Dollar General store in Nash, Texas, which yielded a take of $800.00 or $900.00.[4] Darby testified that he and Krause purchased a large amount of drugs with this money and distributed it to friends at a party. After the party, Darby was again in need of cash. He started cruising the streets in his father's car, which his father had already reported as stolen, and Darby stole a purse from the clutches of ninety-four-year old Dorothy Dillard.[5] Dillard "hollered and screamed" and

---

[2]This led to Darby's conviction for theft discussed in our cause number 06-15-00045-CR.

[3]This led to Darby's conviction for theft discussed in our cause number 06-15-00046-CR.

[4]This led to Darby's conviction for aggravated robbery discussed in our cause number 06-15-00044-CR.

[5]This led to Darby's conviction for aggravated robbery discussed in our cause number 06-15-00043-CR.

3

put up a good fight until Darby threw her over the trunk of her car. Hearing her cries, Dillard's neighbor came to help, causing Darby to flee in his father's car. Darby testified that he saw a police car as he fled from the robbery and panicked. He escaped after leading police officers on a risky chase through residential neighborhoods.

Darby's escape placed his father in the difficult position of having to identify him from a video recording of Darby's armed robbery of the Nash Dollar General. Police officers learned that Darby was staying with Krause, obtained a warrant to search Krause's home, and found items linking Darby to the crimes. Michael Sutton, a detective with the Nash Police Department, testified that Darby confessed to all of the crimes during interrogation. Thus, in addition to the evading arrest charge involved in this case, Darby was also charged with the aggravated robberies and theft referenced above.

While in jail and awaiting trial, Darby allegedly sexually assaulted an underage inmate and was charged with two counts of aggravated sexual assault. On February 5, 2015, Darby pled guilty to evading arrest with a motor vehicle, theft in an amount valued at $1,500.00 or more but less than $20,000.00, and three counts of aggravated robbery, but did not plead guilty to the aggravated sexual assault charges. Accordingly, the State decided to try the aggravated sexual assault cases at a later date and proceeded with the remaining offenses in a consolidated trial on punishment.

At punishment, in addition to the testimony of Darby and his father, the jury heard the details of Darby's crimes from the mouths of all of his victims, including Jeannie Marie Goins and Tiffany Provence, who were both held at gunpoint during the Shell station and Dollar General robberies. Video-recorded surveillance footage of both robberies was played for the jury. In

4

addition, the State introduced evidence of the unadjudicated aggravated sexual assault offenses during punishment, giving rise to Darby's first two points of error.

## II. The Trial Court Did Not Abuse Its Discretion in Allowing Evidence of Extraneous Crimes Under Article 37.07

### A. The Evidence of Extraneous Crimes

Just prior to the punishment trial, Darby argued that the unadjudicated aggravated sexual assaults were irrelevant, were not proven beyond a reasonable doubt, and, in the alternative, that evidence of these extraneous crimes should be excluded under Rule 403. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, §3 (West Supp. 2014); TEX. R. EVID. 403, 60 TEX. B.J. 1129, 1134 (1997).[6]

In response, the State explained that Darby was charged with aggravated sexual assault of fellow inmate Jacob Andrew Roberts and that Roberts would testify at punishment that "[h]e was placed in a pod with the defendant and four other inmates," that "[t]hey all physically assaulted him[,] . . . and [that] they inserted a toothbrush in his anus." The State also asserted that Roberts would testify that he was later assaulted and that "Darby directed he and [inmate] Houston Gregory . . . [to] engage in oral sexual behavior or . . . he would beat them up." The State informed the trial court that Roberts and another inmate would testify to the event and that there was "jail video showing the activities occurring in the common area of the pod." After hearing from the State, the trial court overruled Darby's objections.

---

[6]The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and the Texas Court of Criminal Appeals, effective April 1, 2015. The Texas Rules of Evidence cited in this opinion are the Rules in effect at the time when this case was tried in February 2015. To facilitate access to the text of the prior version of the Rules, each citation to the Texas Rules of Evidence will be followed by a citation to the volume and page of the Texas Bar Journal in which the prior version of the cited Rules first appeared.

During punishment, the jury heard evidence of acts of physical and sexual abuse against Roberts, which occurred while he was confined in a pod with Darby, Gregory, Ayende Germany, Craig Taylor, and Kwesie Wilson at the Bowie County Jail.[7] Roberts was the smallest inmate and the only Caucasian in the pod. Germany and Roberts both testified that Darby, the largest inmate, bullied Roberts. According to Germany, Darby and others physically assaulted Roberts for "about a week" in continuous beatings that lasted twenty to thirty minutes at a time. Roberts described the physical attacks and stated that Darby was "the main person . . . orchestrating everything." Germany testified that two of the physical beatings included sexual assault and that Darby was the instigator of these acts.

During the first sexual assault, Germany testified that Darby left the cell to retrieve a toothbrush and then used it to anally rape Roberts. Roberts testified that although his head was being held down and he could not see who was sexually assaulting him with the toothbrush, he believed Darby was the perpetrator because he was holding the toothbrush immediately after the assault. According to Germany, Darby ended the assault after informing Roberts that the group would be back to torment him. During the second assault, both Roberts and Germany testified that Darby and others beat Roberts for fifteen to thirty minutes before Darby ordered Roberts to perform oral sex on Gregory. According to Germany, Gregory initially refused the order, but both Gregory and Roberts gave in to Darby's threats and engaged in oral sex. Roberts testified that Darby forced him to engage in the act. Captain Jerl Palmore, an investigator with the Bowie

---

[7]These inmates were confined together because they were all under the age of eighteen.

County Sheriff's Office, testified that charges for aggravated sexual assault were pending against Darby and others.

Darby denied the acts of physical violence and sexual assault against Roberts, whom he had previously met while attending a party. Darby claimed that the acts were committed by Gregory. According to Darby, Roberts was fabricating the allegations against him because he was the only person that Roberts had known in the free world, and, although Darby had the means, he did not stop Gregory's assaults.

### B. The Trial Court Did Not Abuse Its Discretion In Making Its Threshold Determination Under Article 37.07

On appeal, Darby argues that the State failed to prove the unadjudicated sexual assault offenses beyond a reasonable doubt. In support, Darby cites to his own testimony and raises issues of potential conflicts in the evidence.

Section 3(a)(1) of Article 37.07 of the Texas Code of Criminal Procedure, which governs the admissibility of evidence at punishment in all non-capital cases, provides,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). The trial court bears the responsibility to determine threshold issues of admissibility while the jury maintains the power to decide whether the State has met its burden of proof. *See Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.—San

7

Antonio 1999, no pet.). The trial court's determination is an initial determination of whether the extraneous offense is relevant. *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.); *see Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996).

The purpose of a punishment proceeding is not to prove guilt, but instead to allow a jury to assess punishment in line with the objectives of the Texas Penal Code. *Rogers v. State*, 991 S.W.2d 263, 265–66 (Tex. Crim. App. 1999); *see* TEX. PENAL CODE ANN. § 1.02(1) (West 2011). The test for relevancy is much broader during the punishment phase because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range. *See Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (op. on reh'g), *superseded by statute on other grounds*, Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (amended 1990, 1993, 1995, 1996, 1997, 1999, 2001, 2005, 2007, 2011, 2013) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2014)). The Texas Court of Criminal Appeals has held that

> [w]hat is "relevant" to the punishment determination is simply that which will assist the fact-finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."

*Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (citations omitted). Thus, "we determine only whether the evidence showed that [Darby] committed the prior bad acts." *Lewis v. State*, No. 06-14-00111-CR, 2015 WL 1324765, at *2 (Tex. App.—Texarkana Mar. 24, 2015, pet. ref'd) (mem. op., not designated for publication).

In our review of Darby's point of error, we keep in mind that "[t]rial courts are afforded a wide range of discretion within which to admit or exclude evidence." *McClure v. State*, 269 S.W.3d 114, 119 (Tex. App.—Texarkana 2008, no pet.) (citing *Wilder v. State*, 111 S.W.3d 249, 255 (Tex. App.—Texarkana 2003, pet. ref'd)); *see Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Beham v. State*, No. 06-14-00174-CR, 2015 WL 5460584, at *7 (Tex. App.—Texarkana Sept. 18, 2015, no pet. h.). Thus, "[a]s a reviewing court, we will not reverse a trial court's decision to admit or exclude evidence absent a showing that the lower court abused that discretion." *McClure*, 269 S.W.3d at 119. "If the trial court's decision falls within the zone of reasonable disagreement, that decision will not be disturbed." *Id.* (citing *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

The threshold determination by the trial court is not that the State has proved the extraneous offense beyond a reasonable doubt, "but is instead a finding that sufficient evidence exists from which a jury could reasonably so find." *Arzaga*, 86 S.W.3d at 781 (citing *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)).[8] In this case, before the trial court ruled on the admissibility of the extraneous acts, the State represented that testimony from Roberts and another inmate would directly implicate Darby in the unadjudicated aggravated sexual assaults. In response, Darby did not argue that his role in the extraneous

---

[8]Accordingly, "'we do not review the sufficiency of the evidence of an extraneous offense to support the jury's assessment of punishment.'" *Thompson v. State*, 425 S.W.3d 480, 491 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)); *see McClure*, 269 S.W.3d at 118 (citing *Malpica v. State*, 108 S.W.3d 374, 378–79 (Tex. App.—Tyler 2003, pet. ref'd)); *Wilson v. State*, 15 S.W.3d 544, 548 (Tex. App.—Dallas 1999, pet. ref'd).

offenses was questionable. He offered nothing to show why the jury would be unable to reasonably find that he had committed the extraneous offenses after hearing the testimony of the alleged victim and another inmate, as described by the State's proffer.[9] Therefore, we find that the trial court did not abuse its discretion in making its threshold determination under Article 37.07.

We overrule Darby's first point of error.

### C. The Trial Court Did Not Abuse Its Discretion in Overruling Darby's Rule 403 Objection to the Extraneous Offenses

Next, Darby argues that evidence of the extraneous aggravated sexual assaults should have been excluded pursuant to Rule 403 of the Texas Rules of Evidence, which allows relevant

---

[9]In support of his arguments on this point, Darby cites to evidence presented after the trial court made its ruling under Article 37.07. However, the record establishes that prior to the punishment hearing, the trial court found the offenses relevant to the issue of punishment, overruled a Rule 403 objection, and stated that it would "let [the State] present [the evidence of extraneous offenses]." Following the pretrial hearing, without further objection, the State presented Germany's and Roberts' testimony about the details of the aggravated sexual assaults. After their testimony, Darby established that the trial court's pretrial hearing included the ruling on admissibility through this dialogue:

> [BY THE DEFENSE]: Just as to the procedure that we went through this morning in the hearing, I thought it was clear to the Court, and I'm pretty sure it was clear to the Court and the D.A., we had filed a Motion in Limine which was granted till this morning. And then that was an actual hearing on the admissibility of all of this about the sexual assaults, is that how the Court viewed it, that that was our formal objection to it?

> THE COURT: That's what I understood it to be.

> [BY THE DEFENSE]: Okay. Because I just wanted to make sure, because I thought the record might be a little confusing that that hearing had been over a Motion in Limine, but it was actually as to the complete admissibility. And I think that's how the Court was ruling, too.

> THE COURT: Yeah.

Thus, while objection to Robert's and Germany's testimony was unnecessary to preserve error, it is clear that the trial court's threshold determination was made pretrial, and we must consider only what was before the trial court at the time that it made its ruling. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991); *Eldred v. State*, 431 S.W.3d 177, 183 (Tex. App.—Texarkana 2014, no pet.); *Loun v. State*, 273 S.W.3d 406, 420 n.22 (Tex. App.—Texarkana 2008, no pet.).

evidence to be excluded, *inter alia*, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403, 60 TEX. B.J. 1129, 1134 (1997).

"A Rule 403 objection requires that the trial court balance the probative value of the evidence against its potentially prejudicial effect." *Beham*, 2015 WL 5460584, at *8 (citing *Montgomery*, 810 S.W.2d at 388–90). "'[U]nfair prejudice' refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Erazo v. State*, 144 S.W.3d 487, 501–02 (Tex. Crim. App. 2004) (Cochran, J., concurring) (quoting *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)), *accord Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). "'Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Beham*, 2015 WL 5460584, at *8 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (internal quotation marks omitted)). "It is therefore the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

At punishment,

> "[a] Rule 403 balancing test includes, but is not limited to, four factors: (1) the probative value of the evidence, or how compellingly the extraneous[-]offense evidence serves to make a fact of consequence more or less probable; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence."

*Id.* (quoting *Flores v. State*, 440 S.W.3d 180, 199–200 (Tex. App.—Houston [14th Dist.] 2013), *vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim. App. 2014)).

11

As to the first factor, "[w]hile a person's criminal history is undoubtedly a relevant factor for a jury to consider when assessing a sentence because it relates to the defendant's character, to be probative and relevant, there must be evidence that the defendant committed the extraneous acts." *Id.* at *8–9; *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also Sims*, 273 S.W.3d 295; *Fowler v. State*, 126 S.W.3d 307, 310 (Tex. App.—Beaumont 2004, no pet.); *Lujan v. State*, 626 S.W.2d 854, 864 (Tex. App.—San Antonio 1981, pet. ref'd). Because he believes the evidence was insufficient to establish that he committed the unadjudicated offenses beyond a reasonable doubt, Darby argues that the probative value of the evidence of the aggravated sexual assaults was low. But, this was not a case where the State attempted to introduce allegations and charges without substantiation. *See Beham*, 2015 WL 5460584, at *8. Here, the State informed the trial court that Roberts and Germany would testify to the details of the aggravated sexual assaults and that their testimony would implicate Darby directly. Accordingly, as conceded by Darby at trial, "there is pretty good probative force here." We find that the first factor weighs in favor of admission.

As to the second factor, Darby argues that the introduction of the sexual assault offenses could have resulted in a decision on an improper basis. In support of his statement, Darby recites the facts of the offenses, including that "shockingly demeaning" acts were committed by African-American inmates against a Caucasian, "physically small[,] juvenile" victim.[10] Yet, a jury should be provided with "complete information . . . to tailor an appropriate sentence for a defendant . . . ."

---

[10]Darby argues, in a conclusory manner, that the facts of the unadjudicated assaults "have the potential to [incite] an improper racial basis for Darby's punishment."

*Sunbury v. State*, 88 S.W.3d 229, 233–34 (Tex. Crim. App. 2002). Thus, it is not improper for a jury to consider the facts of a prior offense, even if shocking, in determining how to sentence a defendant. While the facts of any extraneous crime will be prejudicial, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Thus, we find the second factor weighs in favor of admission.

The third factor involves the time needed to develop the evidence. Darby argues that the presentation of the evidence consumed "approximately 205 pages of the total of approximately 297 pages of State witness testimony, or 69 percent of the State's testimony during the case in chief." At the time of the ruling on admissibility, the State had informed the trial court that the extraneous offenses could be established through the testimony of Roberts and Germany—only two out of the twenty witnesses who testified at punishment. However, Darby is correct in arguing that the State spent a considerable amount of time developing the evidence of extraneous offenses. Thus, we find that this factor weighs against admission.

As to the fourth factor, Darby argues that the State's need for the evidence weighed against admission because the jury was already considering Darby's commission of five offenses during punishment. However, as explained by the State, the evidence was needed to show that Darby is a "dangerous, violent[,] criminal offender" who "continue[d] to victimize[] those who [were] weaker than him," even while incarcerated. Given the State's explanation, we do not find that the trial court abused its discretion in determining that the State's need for the evidence weighed in favor of admission.

13

In summation of his Rule 403 argument before the trial court, Darby stated, "I think the Court could rule this is admissible." We agree. All but the third factor weigh in favor of admitting the extraneous-offense evidence during punishment. In light of the foregoing analysis, we find that Darby has failed to show that the trial court abused its discretion in overruling his Rule 403 objection to the introduction of the unajudicated sexual assault offenses at punishment. Accordingly, we overrule Darby's second point of error.

## III. Darby's Jailhouse Conversation About Escape Was Properly Admitted

After stating that he felt remorse for the acts to which he pled guilty, Darby testified, "My goal here today is to accept whatever the jury's punishment is as a man and tak[e] responsibility of [sic] my actions for these crimes." During a lunch break on the day that the jury heard Darby's testimony, the State learned of an audio-recorded conversation that Darby had with his father during a jailhouse visit the previous night. In that conversation, Darby asked about the possibility of escape from the courthouse and asked his father if he would facilitate the getaway.[11] The State sought to introduce the audio recording to rebut Darby's testimony that he was "willing to accept [his] punishment."

### A. The Jailhouse Conversation Constituted Rebuttal Evidence

Darby objected to the admission of the audio recording on the ground of unfair surprise because the conversation had not been previously disclosed by the State as an extraneous offense it intended to use at trial. After the State argued that it did not have to provide notice of rebuttal evidence, Darby argued for exclusion of the conversation because the State could have impeached

---

[11]Darby's father refused to take part in any escape attempt.

14

Darby with the evidence, but instead chose to offer the evidence during rebuttal. The trial court learned that the State had just recently acquired the evidence over the lunch break, adjourned for the day to provide the defense ample opportunity to review the conversation, and overruled Darby's objections to the conversation the following morning.

On appeal, citing to *Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002), and *Gipson v. State*, 619 S.W.2d 169, 170–71 (Tex. Crim. App. [Panel Op.] 1981), Darby concedes that the State is not required to give prior notice of extraneous offenses used during cross-examination or as rebuttal to either a defensive theory or mitigation evidence. Yet, Darby argues that "evidence of an alleged discussion of escape . . . does not rebut evidence of remorsefulness." However, Darby does not address the State's second reason for admitting the evidence—to rebut Darby's testimony that he was willing to take responsibility for his actions by accepting the jury's verdict. In light of the State's second reason, we find no abuse of discretion in the trial court's decision to admit the conversation as rebuttal evidence. We overrule this point of error.

### B. The Trial Court Did Not Abuse Its Discretion in Finding that the Conversation Was Properly Authenticated

The State sought to admit the recorded conversation through the testimony of Keith Chestnutt, a lieutenant with the Nash Police Department. Chestnutt testified (1) that he had spoken several times with Darby and Darby's father, (2) that as a result of those conversations, he had become familiar with their voices, and (3) that the voices on the recording belonged to Darby and his father.

Jeff Neal, a deputy with the Bowie County Sheriff's Office, testified that according to jailhouse visitation logs, Darby's father was visiting Darby at a time when the alleged conversation

15

was recorded. Neal testified that inmates were required to use telephones in order to communicate through the Plexiglass barriers that separate inmate from visitor. In addition to describing the system used by the Bowie County Jail to record these conversations, Neal explained that prior to using the telephone, each inmate is required to enter a unique, six-digit, identifying Sheriff's Office (SO) number as well as a personal identification number (PIN) that the inmate previously selected. Neal testified that although he was unaware of Darby's PIN number, the SO number entered at the beginning of the recording belonged to Darby. Neal also stated that he had heard the recording in which Darby spoke with his father about escaping from the courthouse.

When the State offered the conversation, Darby lodged the following objection: "[T]he proper foundation hasn't been laid. There's some numbers that have been mentioned that haven't been proven up, an SO number, a pin number, and a visitor log, that none of that has been admitted into evidence and proved up. We think it's a precedent necessary for admission." The trial court overruled Darby's objection.

On appeal, Darby argues that the evidence should have been excluded under Rule 901(b)(1) of the Texas Rules of Evidence. That Rule provides, in relevant part:

> **(a)** **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> (**b**) **Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
>> (1) *Testimony of witness with knowledge*. Testimony that a matter is what it is claimed to be.

16

. . . .

> (5) *Voice identification*. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker.

TEX. R. EVID. 901, 60 TEX. B.J. 1129, 1152 (1997).

Darby specifically argues that the recording should have been excluded because Neal did not testify to his familiarity with Darby's or his father's voices prior to stating that the voices on the recording belonged to them.[12] However, prior to the trial court's ruling, Chestnutt testified that he was familiar with the voices of Darby and his father and that the voices on the recording belonged to them.

As illustrated by Rule 901(b)(5), Chestnutt's testimony was all that was required to meet the authentication requirement of Rule 901. *See* TEX. R. EVID. 901; *see also Angleton v. State*, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998) (en banc). Moreover, the trial court had already heard both Darby and his father testify and had listened to the recording prior to making its ruling. Consequently, we find that the trial court did not abuse its discretion in overruling Darby's objection to the authenticity of the recorded conversation. *See Capps v. State*, 244 S.W.3d 520, 527 (Tex. App.—Fort Worth 2007, pet. ref'd). We overrule this point of error.

---

[12]Darby also argues on appeal that Neal was "not a witness with personal knowledge . . . of how the [recording] system worked or that it, in fact, worked, since it was provided by Correct Solutions," a third party provider. This argument was not presented to the trial court. Consequently, we did not consider it on appeal.

17

## IV.   The Underlying Offense Is a Third Degree Felony

During his plea, Darby acknowledged that he was pleading guilty to evading arrest with a motor vehicle as a third degree felony offense after being admonished that the punishment range was "not less than two nor more than ten years in TDC and a fine not to exceed $10,000."  Yet, Darby argues that evading arrest with a motor vehicle is a state jail felony, not a third degree felony.

His argument is based on the passage of seemingly conflicting bills.  As explained by the Fort Worth Court of Appeals in *Adetomiwa v. State*,

> In the 2011 regular session, the legislature passed three bills amending the evading arrest statute.  *See* Act of May 27, 2011, 82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Sess. Law Serv. 2320, 2320–21 (West) (current version at TEX. PENAL CODE ANN. § 38.04); Act of May 24, 2011, 82nd Leg., R.S., ch. 839, § 4, 2011 Tex. Sess. Law Serv. 2110, 2111 (West) (current version at TEX. PENAL CODE ANN. § 38.04); Act of May 23, 2011, 82nd Leg., R.S., ch. 391, § 1, 2011 Tex. Sess. Law Serv. 1046, 1046 (West) (current version at TEX. PENAL CODE ANN. § 38.04).  Senate Bill 496 and House Bill 3423 both provide that evading arrest is a state jail felony if the actor uses a vehicle while in flight.  However, Senate Bill 1416 provides that evading arrest is a third degree felony if the actor uses a vehicle while in flight.  These two differing punishment schemes are both codified in section 38.04:
>
> > "(a)     A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him.
> >
> > (b)      An offense under this section is a Class A misdemeanor, except that the offense is:
> >
> > *Text of subsec. (b)(1), (2) as amended by Acts 2011, 82nd Leg., ch. 391 (S.B. 496), § 1 and Acts 2011, 82nd Leg., ch. 839 (H.B. 3423), § 4*
> >
> > (1)      a state jail felony if:

(A)     the actor has been previously convicted under this section; or

(B)     the actor uses a vehicle or watercraft while the actor is in flight and the actor has not been previously convicted under this section;

(2)     a felony of the third degree if:

(A)     the actor uses a vehicle or watercraft while the actor is in flight and the actor has been previously convicted under this section; or

(B)     another suffers serious bodily injury as a direct result of an attempt by the officer or investigator from whom the actor is fleeing to apprehend the actor while the actor is in flight; or

*Text of subsec. (b)(1), (2) as amended by Acts 2011, 82nd Leg., ch. 839 (H.B. 3423), § 4 and Acts 2011, 82nd Leg., ch. 920 (S.B. 1416), § 3*

(1)     a state jail felony if the actor has been previously convicted under this section;

(2)     a felony of the third degree if:

(A)     the actor uses a vehicle while the actor is in flight;

(B)     another suffers serious bodily injury as a direct result of an attempt by the officer or investigator from whom the actor is fleeing to apprehend the actor while the actor is in flight; or

(C)     the actor uses a tire deflation device against the officer while the actor is in flight. . . . "

19

TEX. PENAL CODE ANN. § 38.04. Thus, if the person uses a vehicle in flight and if the person has not been previously convicted under section 38.04, the offense of evading arrest is a state jail felony under one of the amended versions of section 38.04 (specifically, subsection (b)(1)(B)), but the offense is a third degree felony under the other amended version of section 38.04 (specifically, subsection (b)(2)(A)). *See id.*

*Adetomiwa v. State*, 421 S.W.3d 922, 925–26 (Tex. App.—Fort Worth 2014, no pet.).

After pointing out the possibility of conflict, the Fort Worth Court of Appeals concluded (1) that the amendments were not irreconcilable; (2) that "Senate Bill 1416 amended the punishment scheme of section 38.04 to provide that evading arrest with a motor vehicle is a third degree felony if the actor uses a vehicle in flight"; and (3) that even if the amendments were irreconcilable, the last legislative vote on Senate Bill 1416, which amended the punishment scheme to provide that evading arrest was a third degree felony, would prevail. *Id.* at 927.[13] Citing *Adetomiwa*, the Beaumont Court of Appeals also ruled that evading arrest with a motor vehicle is a third degree felony. *State v. Sneed*, No. 09-14-0232-CR, 2014 WL 4755502, at *3 (Tex. App—Beaumont Sept. 24, 2014, pet. ref'd) (mem. op., not designated for publication).

Darby acknowledges the holdings in *Adetomiwa* and *Sneed*, but urges this Court to conclude differently. However, this issue is not new to Texas jurisprudence and has been consistently decided against Darby. *See Reyes v. State*, 465 S.W.3d 801 (Tex. App.—Eastland 2015, pet. filed); *Adetomiwa*, 421 S.W.3d at 927; *Mims v. State*, 434 S.W.3d 265, 269–70 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Salazar v. State*, No. 13-14-00563-CR, 2015 WL

---

[13]The *Adetomiwa* court noted, "The last legislative vote taken on Senate Bill 496 was the House vote on May 23, 2011, the last legislative vote taken on House Bill 3423 was the Senate vote on May 24, 2011, and the last legislative vote taken on Senate Bill 1416 was the Senate concurrence with the House amendment on May 27, 2011." *Adetomiwa*, 421 S.W.3d at 927.

20

5162922, at *5–6 (Tex. App.—Corpus Christi Sept. 1, 2015, no. pet. h.); *Franco v. State*, No. 04-13-00906-CR, 2015 WL 3616057, at *4 (Tex. App.—San Antonio June 10, 2015, no pet.) (mem. op., not designated for publication); *Sneed*, 2014 WL 4755502, at *3; *Thompson v. State*, No. 12-13-00264-CR, 2014 WL 3662239, at *1–2 (Tex. App.—Tyler July 23, 2014, no pet.) (mem. op., not designated for publication); *see also Jenkins v. State*, 454 S.W.3d 712, 713, 715 (Tex. App.—Corpus Christi 2015, no pet.); *Thomas v. State*, No. 06-14-00002-CR, 2014 WL 7140235, at *l (Tex. App.—Texarkana Dec. 16, 2014, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Jones*, 440 S.W.3d 628, 629–30 (Tex. Crim. App. 2014)); *Vidales v. State*, No. 07-13-00286-CR, 2015 WL 2375386, at *1 n.2 (Tex. App.—Amarillo May 15, 2015, pet. ref'd).[14]

For reasons employed in these well-reasoned opinions, we also conclude that evading arrest with a motor vehicle is a third degree felony offense. We overrule this point of error.

## V.      We Modify the Judgment to Reflect the Proper Name of the Defendant

This Court has the "authority to reform a judgment . . . to make the record speak the truth when the matter has been called to [our] attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* TEX. R. APP. P. 43.2; *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in [the] trial court; we may act sua sponte and may have a duty to do so." *Rhoten*,

---

[14]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

21

299 S.W.3d at 356 (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, writ ref'd); *see French*, 830 S.W.2d at 609.

We note that the style of the trial court case and the State's indictment identify the defendant as "Richard Taylor Darby," but that the judgment identifies "Richard Darby" as the defendant. The evidence in this case established that the defendant's name is Richard Taylor Darby, III, and that his father is Richard Taylor Darby, Jr. To avoid confusion in the future, we modify the trial court's judgment to reflect a conviction against Richard Taylor Darby, III.

## VI.    Conclusion

We affirm the trial court's judgment, as modified.


Jack Carter
Justice

Date Submitted:    September 29, 2015
Date Decided:      October 30, 2015

Do Not Publish