Karen May PAROLINE, Appellant

v.

The STATE of Texas, Appellee

No. 06-16-00101-CR

Court of Appeals of Texas,
Texarkana.

Date Submitted: February 7, 2017
Date Decided: March 30, 2017

Alwin A. Smith, Attorney at Law, 602 Pine Street, Texarkana, TX 75501, for Appellant.

Kate Curry Carter, Assistant District Attorney, 601 Main Street, Texarkana, TX 75501, Jerry D. Rochelle, Bowie County

District Attorney, 601 Main St., Texarkana, TX 75501, for Appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

On the night of March 21, 2015, Karen May Paroline used Sherman Prewitt's debit card to fill her automobile with gasoline at Love's Truck Stop in Leary, Texas, and used the card to make purchases and cash withdrawals from his bank account. The State alleged that Prewitt had only authorized her to use the card to put in $5.00 worth of gasoline in her car, but that she exceeded Prewitt's authority. She is alleged to have used his debit card to fill her automobile with gasoline, draw money from the bank account, and make unauthorized purchases at multiple places by duping him into believing that she was attempting to use his card to reimburse his account. The evidence elicited by the State suggested that Paroline then abandoned Prewitt at the Texarkana Walmart, some distance from where the two had begun. As a result, Paroline was indicted for exploitation of a disabled individual.[1] A Bowie County jury found Paroline guilty, and after punishment was enhanced for two prior felony convictions, the jury assessed her punishment at fifty-five years' imprisonment.[2]

On appeal, Paroline asserts that the trial court erred (1) by improperly limiting her opening statement, (2) by admitting Prewitt's medical records, (3) by allowing Prewitt's social worker and Prewitt's mother to testify in violation of Rule 701 of the Texas Rules of Evidence, and (4) by admitting evidence in the punishment hearing of an extraneous offense in violation of Article 37.07 of the Texas Code of Criminal Procedure. In addition, Paroline challenges the sufficiency of the evidence showing that Prewitt is a disabled individual. We find (1) that the trial court did not abuse its discretion in limiting Paroline's opening statement, (2) that Paroline failed to preserve her asserted errors regarding the admission of Prewitt's medical records, the testimony of his social worker, and the testimony of his mother, (3) that sufficient evidence supports the jury's finding that Prewitt is a disabled individual, and (4) that any error in the admission of extraneous-offense evidence during the punishment phase did not affect Paroline's substantial rights. We affirm the judgment of the trial court.

## I. No Abuse of Discretion in Limiting Opening Statement

In her first point of error, Paroline complains that the trial court erred by improperly limiting her opening statement when it prevented her from referring to a sexual relationship between Paroline and Prewitt. This, she argues, prevented her from informing the jury of their prior relationship and allowing the jury to assess the veracity of the State's witnesses. In addition, she asserts that this prevented her from making a meaningful opening statement in violation of Article 36.01 of the Texas Code of Criminal Procedure and her right to due process.

Initially, we note that "[t]he right to make an opening statement is a statutory right and not a constitutional imperative or mandate." *Moore v. State*, 868 S.W.2d 787, 788–89 (Tex. Crim. App. 1993) (citing *Dunn v. State*, 819 S.W.2d 510, 524 (Tex. Crim. App. 1991)). The right to make an

---

1. *See* Tex. Penal Code Ann. § 32.53(b) (West 2016).

2. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2016).

opening statement is contained in Article 36.01 of the Texas Code of Criminal Procedure. *Id.* at 789; *see* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(5) (West 2007). Since it is a valuable right, denial of a timely request to present an opening statement may constitute reversible error. *Moore*, 868 S.W.2d at 789. However, when the defendant makes an opening statement, "the character and extent of such statement are subject to the control of the trial court...." *Norton v. State*, 564 S.W.2d 714, 718 (Tex. Crim. App. [Panel Op.] 1978) (quoting *McBride v. State*, 110 Tex.Crim. 308, 7 S.W.2d 1091 (1928)). The proper function of the defendant's opening statement is to state "the nature of the defenses relied upon and the facts expected to be proved in their support." TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(5); *see also Norton*, 564 S.W.2d at 718; *Guillory v. State*, 397 S.W.3d 864, 868 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Further, it is incumbent on the defendant to exercise good faith in spelling out in opening statements what she anticipates the evidence will show. *See Norton*, 564 S.W.2d at 718.

■ We review the trial court's rulings on opening statements for abuse of discretion. *See Donnell v. State*, 191 S.W.3d 864, 867 (Tex. App.—Waco 2006, no pet.). It is an abuse of discretion only if the trial court's ruling is outside the "zone of reasonable disagreement." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

In this case, at a pretrial hearing, the trial court granted the State's motion in limine and forbade any evidence of sexual conduct between Paroline and Prewitt before a hearing on its admissibility was held outside the presence of the jury. When Paroline advised the court that it would come up in her opening statement, the

court clarified that she could refer to their prior dealings with each other, just not to sexual conduct between the two. Before opening statements, Paroline reiterated her objection to the court's ruling constraining any mention in her opening statement of a possible sexual relationship between her and Prewitt, and the court reaffirmed its ruling.

In her opening statement, Paroline told the jury that they would hear evidence that she and Prewitt were not strangers, that there was a relationship between Prewitt and her, and that the evidence would show that Prewitt intentionally misidentified her to authorities investigating the situation because they were friends. At trial, although Prewitt was asked multiple times by both the State and Paroline if he knew Paroline before the night of the incident, he denied knowing her each time he was asked. Further, Paroline presented no evidence to show that there was any sexual contact or relationship between Paroline and Prewitt.

Since the trial court allowed Paroline to advise the jury that the evidence would show that she and Prewitt were friends and had a relationship, and since there was no evidence later produced at trial of any sexual relationship between them, we cannot say that the trial court's limitation on her opening statement was an abuse of discretion. *See Norton*, 564 S.W.2d at 718. We overrule Paroline's first point of error.

## II. Paroline's Complaints Were Not Preserved

In her second point of error, Paroline complains that the trial court erred in admitting Prewitt's medical records through the testimony of his social worker, Laura Shackelford, under Rule 701 of the Texas Rules of Evidence.[3] In addition, Pa-

---

3. Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limit-

roline complains that the trial court allowed Shackelford to testify that Prewitt's behavior was consistent with an individual having autism. Paroline complains in her third point of error that the trial court erred in admitting the testimony of Prewitt's mother, Beth Prewitt (Beth), that Prewitt was autistic, in violation of Rule 701. However, Paroline failed to preserve these complaints.

Since "[p]reservation of error is a systemic requirement on appeal," we are directed to address it on our own motion, even if the parties have not raised it. *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)); *Reece v. State*, 474 S.W.3d 483, 487 (Tex. App.—Texarkana 2015, no pet.). Unless an issue has been preserved for appeal, we should not address its merits. *Reece*, 474 S.W.3d at 487 (citing *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g) (per curiam)).

To preserve error for our review, the record must "demonstrate (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion, or he refused to rule and the complaining party objected to that refusal." *Id.* (quoting *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (citing TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003))). Also, "the objection must be specific, timely, and made each time inadmissible testimony or evidence is offered," unless the party "either obtains a running objection or requests a hearing outside the presence of the jury." *Id.* at 488 (citing *Haley*, 173 S.W.3d at 516–17).

Further, the "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

[U]nder Rule 33.1, the party's objection unless it is apparent from the context, must be specific enough to "let the trial judge know what he wants [and] why he thinks himself entitled to it, and [to] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Reece*, 474 S.W.3d at 488 (quoting *Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992))); *see also* TEX. R. APP. P. 33.1(a)(1)(A).

In this case, Prewitt's medical records were admitted as the business records of Community Healthcore, through its custodian of records, Cynthia Edwards. The only objections Paroline made to the admission of the medical records were that the records were testimonial and that their admission violated her right to confront and cross-examine the doctor making any findings that appeared in the records. Later, in a hearing outside the presence of the jury, Paroline objected on the same basis of the right of confrontation to the testimony of Shackelford to the extent that she was relying on the medical records. After her clearly delineated objection was overruled, Paroline requested, and was granted, a running objection to Shackelford's testimony. In addition, Paroline requested, and was granted, a running objection to the content of the medical records, this objection being likewise based on an

---

ed to one that is:

 (a) rationally based on the witness's perception; and

 (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue.

TEX. R. EVID. 701.

alleged violation of her right of confrontation. However, Paroline never complained to the trial court that the medical records were inadmissible under Rule 701, the objection she now argues on appeal. Therefore, her complaint as to the admission of the medical records on appeal does not comport to her objection in the trial court. Consequently, we find that Paroline has not preserved this complaint on appeal. *See Reece*, 474 S.W.3d at 488.

■ During Shackelford's testimony, the State asked her if, based on her contact with Prewitt, the behavior she observed was consistent with an individual having autism. Paroline objected that the testimony was outside Shackelford's expertise. After the objection was overruled, Shackelford testified in the affirmative. Paroline complains on appeal that the admission of the testimony was error since Shackelford had not been qualified as an expert. Paroline fails to take into account that when Shackelford was again asked whether Prewitt's behavior was consistent with him being autistic, she again answered in the affirmative, this time without objection. Since Paroline neither objected to the subsequent testimony nor obtained a running objection after the first proffer of the testimony, she has not preserved this complaint on appeal. *See id.* Therefore, we overrule Paroline's second point of error.

■ Before calling Beth to testify, the following exchange took place:

[BY THE STATE]: In regard to the Court's ruling on the Defense's motion in limine, this witness also will testify about her son being diagnosed with autism at the age of five, just as Laura Shackelford did, and I wanted to make the Court aware of that if you need to hear testimony outside the presence of the jury before we proceed.

THE COURT: Well, I've allowed the admissibility of the records, so—and of course, she should have personal knowledge of that fact as his mother.

[BY THE STATE]: Yes, sir.

[BY COUNSEL FOR PAROLINE]: Same objection, Judge, and a running objection to it.

THE COURT: Any objections to the running objection?

[BY THE STATE]: No, Your Honor.

THE COURT: All right, very good.

Paroline made no other objection to Beth's testimony. Here, the basis of Paroline's objection is not clear. Although there previously had been an objection to the lack of qualifications of a person purporting to testify as an expert without having been first proven to hold that status, the context here would indicate that when Paroline said, "[S]ame objection," she was making reference to an alleged interference with Paroline's right to confront witnesses, not to the lack of proof of the expertise of the witness. In context, it appears that this may be how the trial court understood the basis of the objection. If so, then Paroline's point of error on appeal does not comport with her objection at trial. We also believe that the vagueness of Paroline's objection violates the requirement that it be of "sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(A). Consequently, we find that Paroline has not preserved this complaint for appeal. We overrule her third point of error.

### III. Sufficient Evidence Supports the Jury's Disability Findings

In her fourth point of error, Paroline asserts that there was insufficient evidence to support the jury's finding that Prewitt was disabled. Paroline argues that the testimony of Shackelford and Beth shows that Prewitt was able to protect himself from

harm and that he was able to provide food, shelter, and medical care for himself. Therefore, she argues, Prewitt did not meet the definition of a disabled person. The State argues that while the testimony of these individuals shows some independence as to some aspects of Prewitt's life, it also shows that he meets the statutory definition of a disabled individual. In addition, the State points out that based on both his testimony and demeanor at trial, the jury could reasonably find that Prewitt was a disabled individual. We agree.

### A. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a measure called a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Under the statute and the indictment, to obtain a conviction, the State was required to prove beyond a reasonable doubt that on or about March 23, 2015, Paroline, (1) for monetary or personal benefit, profit, or gain, (2) intentionally or knowingly (3) caused the exploitation of (4) Prewitt, (5) who was disabled, (6) by the illegal or improper use (7) of Prewitt's debit card for unauthorized purchases. *See* TEX. PENAL CODE ANN. § 32.53(b). Since Paroline only challenges the sufficiency of the evidence to support the finding that Prewitt was disabled, we will only address the evidence relevant to that element.

On the date of the offense, the Texas Penal Code defined a disabled individual as "a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from

harm or to provide food, shelter, or medical care for himself." Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.125(a), 1995 Tex. Gen. Laws 621, 683 (amended 2015) (current version at TEX. PENAL CODE § 22.04(c)(3)(B) (West Supp. 2016)). To show that an individual is disabled, it is sufficient to show that because of age or physical or mental disease, defect, or injury, he is substantially unable to protect himself from harm. *Morgan v. State*, 365 S.W.3d 706, 708–09 (Tex. App.—Texarkana 2012, no pet.).

## B. The Evidence at Trial

Prewitt's medical records reflect that when he was nine years old, he exhibited autistic-like behavior, such as demonstrating little fear, and often being unaware of the potential that he may be hurt. He was also seeing a psychiatrist who had placed him on medication. The records also reflect that Prewitt had difficulties with obsessive and compulsive behaviors, severely impaired personality development, seriously impaired affective functioning, and subnormal intelligence, with an intelligence quotient of seventy-five. In addition, the records show he was diagnosed with childhood onset pervasive developmental disorder, autistic disorder, and mental retardation.

At trial, Shackelford testified that she is a social worker for Community Healthcore, and that Prewitt is one of her clients, with whom she meets monthly. She testified that Prewitt has had developmental problems since he was nine, along with behavioral and impulse control issues. Prewitt sees a psychiatrist quarterly, who monitors his medications, and a doctor checks him monthly. Shackelford testified that Prewitt is very trusting and that he is easily misled, which she believes is consistent with autism. She stated that Prewitt lives in a mobile home behind his parents' house, and his parents still assist him even though he is in his mid-thirties. Beth is a cosigner and authorized monitor of his checking account and helps him with money management.

On cross-examination, Shackelford acknowledged that she was testifying as to another's diagnosis and her own personal observations. She testified that Prewitt has a job at Dairy Queen, but she did not know his salary. She acknowledged that he rides his bicycle around Hooks and that he occasionally rides it from Hooks to Texarkana. She also acknowledged that he has his own cellular telephone (cell phone) and that he plays the drums. In addition, Prewitt is a high school graduate who is able to read, write, tell time, and keep his appointments. According to Shackelford, he is also able to take his own medication, provide food and shelter for himself, cook, and do laundry. She also pointed out that although he lives independently, his parents still monitor him. In addition, she stated her concern that he would not be able to afford to live on his own or to live independently without his parents' supervision.

Beth testified that Prewitt lives in a portable building in her and her husband's backyard and that it contains a hot plate, a griddle, a toaster oven, a little refrigerator, and his bed. However, it does not have a bathroom, and Prewitt comes into their house to shower and use the bathroom. She said he works one to two hours a day, six days a week, at Dairy Queen, cleaning the lot, sweeping the floors, and helping unload the truck. Beth testified that they tried to teach Prewitt to drive, but gave up because it was not safe for him to drive. She said that he gets around on his three-wheeled bicycle, which he rides around Hooks, and to Texarkana and New Boston. She testified that she buys his monthly groceries and makes sure that he eats nutritious food. She also explained that his cell phone is in her name and that she is

on Prewitt's checking account. She said that although Prewitt has a debit card and can write checks out of his account, she monitors it every day, and she receives an email from his bank every night showing what transactions have occurred in the previous twenty-four hours.[4]

Beth also testified that Prewitt had lived his entire life with his parents. Although he was graduated from high school, he had developmental delays in school. She testified that the teacher he had his first three years thought he was unteachable. She said that when he was young, Prewitt wanted to be by himself and that he was diagnosed with autism in the first grade. He was placed on medication for his autism and remains on it. She monitors his medication to make sure he is taking it and that it gets refilled. Beth testified that Prewitt sees Dr. Montoya for his condition and that either she, her husband, or Prewitt's brother, Gary, take him to his appointments. She also testified that Prewitt walks so much that he wears the soles out of his shoes about every three months and that she has to check on them for him. In addition, Prewitt will walk in the cold and in the rain, without wearing appropriate clothing.

She also testified that she would not allow Prewitt to have an apartment across town by himself because his is too trusting of people. She said that he does not realize that there are bad people in the world. Beth testified that Prewitt will always need someone to look over his shoulder and that she has arranged for his brothers to take care of him if something happens to her and her husband.

On cross-examination, Beth testified that Prewitt told her that a lady asked him to take her to get some gas, took him to

Love's, and when he was going to put five dollars' worth of gas in her vehicle, she would not let him turn the pump off. Prewitt told Beth that the lady then took him to the New Boston Road Walmart in Texarkana. Prewitt told her that he did not know Paroline. She explained that at the time, he did not understand that he had to be leery of people.

Prewitt testified that he had gone to a convenience store near his home about 9:30 p.m. on March 21, 2015. At the store, he was approached by a woman who asked him to go to Love's with her to get gas. He testified that he had never seen her before, but he thought she needed help. He went with her to Love's and gave her his debit card to put gas in her car, telling her to only put in five dollars and no more. However, she ignored him and filled her tank, then went inside Love's. Prewitt testified that he gave her his PIN number because she said she was going to put money back on his card at the automatic teller machine (ATM) in Love's. However, she told him that the ATM did not work and she wanted to go to the Walmart in New Boston to do it there. He said that at the time, he trusted her and agreed to go with her. They went to the Walmart, and he stayed in the car while she went inside. When she came back out, she once again said it did not work, and suggested they go to the Walmart in Texarkana and she would put the money back on his card. Prewitt still believed her and again stayed in the car while she went inside the Texarkana Walmart. He testified that when she came back out, she told him that she had it all done, but that he needed to go inside and sign some paperwork to get the money back on his card. He said that when he

---

4. Beth discovered the unauthorized charges to Prewitt's debit card as a result of her nightly email from his bank.

went inside, nobody knew what he was talking about. When he went back outside, Paroline was gone.

On cross-examination, Prewitt denied that he knew Paroline and that she had been to his portable building. He said that they did not put gas in her car at the Hooks convenience store because Paroline said it had water in it. He admitted that he did not identify her in the photograph lineup at the police station, but denied that he was trying to protect her.

### C. Analysis

 This evidence is sufficient for a reasonable jury to conclude that Prewitt, because of his mental defect, is substantially unable to protect himself from harm or to provide his own food, shelter or medical care. His medical records show that Prewitt had developmental and behavioral issues, as well as a subnormal intelligence. Shackelford testified about Prewitt's developmental issues and stated that as a result of his mental defects, he is easily misled. She also testified that he would not be able to live independently without someone monitoring him. Beth testified that Prewitt does not understand to be leery of people and that she would not let him live independently because he is too trusting of people. She also testified that she does his monthly grocery shopping, monitors his finances, and makes sure he takes and refills his medication. In addition, the jury was able to hear Prewitt's testimony and see his demeanor as he testified about his encounter with Paroline. Although there was also testimony that Prewitt exercises some level of independence, the testimony showed that this is in the context of close monitoring by his par-

ents. A reasonable jury could infer, based on the evidence, that because of Prewitt's mental defect, he is substantially unable to protect himself from harm or to provide his own food, shelter or medical care. Therefore, we conclude that the evidence is sufficient to support the jury's finding that Prewitt was a disabled individual. We overrule Paroline's fourth point of error.

## IV. Any Error in Admitting Extraneous Offense Evidence Did Not Affect Paroline's Substantial Rights

 In her fifth point of error, Paroline complains of the trial court's admission of the testimony of Larry Marrion, an investigator for the police department in Nashville, Arkansas. Marrion testified regarding his investigation of allegations that Paroline had stolen a credit card from an elderly man in Sevier County, Arkansas, and that she had made unauthorized purchases with the card. Paroline argues that since Marrion testified that he relied on a report of the theft from another agency, that he never interviewed the victim to confirm the theft, and that he had no personal knowledge of how Paroline came into possession of the credit card, there was no evidence that a bad act had occurred. The court erred, she argues, because it did not make a meaningful analysis under Article 37.07, Section 3, of the Texas Code of Criminal Procedure to determine whether the State could prove beyond a reasonable doubt that Paroline had committed a bad act.[5] The State argues that the trial court did not abuse its discretion since it heard Paroline's objections and the arguments of counsel, allowed the testimony of Marrion, and gave the jury

---

5. *See* TEX. CODE CRIM. PROC. ANN art. 37.07, § 3(a)(1) (West Supp. 2016). During the punishment phase, the trial court "must make an initial determination at the proffer of the [extraneous offense] evidence that a jury could

reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (2001).

the proper instruction regarding the burden of proving extraneous offenses. In addition, the State argues that even if the trial court abused its discretion in allowing the testimony, Paroline was not harmed by the testimony. Assuming, but not deciding, that the trial court erred in admitting Marrion's testimony, we agree that Paroline's substantial rights were not affected by the error.

 We review a trial court's decision to admit extraneous-offense evidence during the punishment phase for an abuse of discretion. *Beham v. State*, 476 S.W.3d 724, 735 (Tex. App.—Texarkana 2015, no pet.) (citing *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002)); *Wilder v. State*, 111 S.W.3d 249, 255 (Tex. App.—Texarkana 2003, pet. ref'd). If the trial court errs in admitting extraneous-offense evidence in the punishment phase, it is a non-constitutional error. *Id.* at 738 (citing *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd)). We disregard a non-constitutional error unless it affects the defendant's "substantial rights." *Id.* (citing TEX. R. APP. P. 44.2(b)). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *Beham*, 476 S.W.3d at 738. We will not reverse the trial court's judgment for a non-constitutional error if, after reviewing the entire record, we have " 'fair assurance that the error did not influence the jury, or had but a slight effect.' " *Beham*, 476 S.W.3d at 738 (quoting *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

 In determining whether the jury's decision may have been adversely affected by the error, we

> consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Id.* at 738–39 (quoting *Haley v. State*, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005) (citations omitted)).

In this case, Paroline was charged with exploitation of a disabled individual. The evidence established that Paroline deceived Prewitt, a mentally handicapped man, into letting her use his debit card. She exploited his trusting naivete by telling him that she was attempting to put money into his account, all the while making purchases and obtaining cash until the maximum limit of his card was reached. Once there was no more advantage in using the card, Paroline abandoned him in the early morning hours at the Texarkana Walmart, miles away from his home.

At the punishment hearing, Paroline pled true to the two prior felony convictions alleged in the indictment for enhancement purposes. The State's proof regarding these felonies showed that Paroline had been convicted of felony retaliation in Coryell County in 1989 and of robbery in Arkansas in 2001. The State also introduced numerous other judgments of convictions, to which Paroline stipulated. This evidence showed that Paroline had prior felony convictions for burglary and theft in 1986, terroristic threat in 1987, possession of a controlled substance in 2010, forgery in 1985, two retaliation convictions in 1986, possession of a controlled substance in 1997, theft of property in 2001, theft of property in

2004, credit card abuse in 2011, and a misdemeanor theft conviction in 2011.

Marrion testified that in August 2014, he received a report from the Sevier County, Arkansas, Sheriff's Department of an elderly man having his wallet stolen and that his credit card had been used at the Nashville Walmart. He testified that he obtained a copy of the transaction sheet and a video recording from Walmart and that he was able to identify Paroline as the person using the card. In addition, the card had been used at a convenience store in Dierks, Arkansas, and he had also obtained a video recording from that store. Two still photographs from the recording were introduced, one showing an automobile, and one showing Paroline exiting the building. On cross-examination, Marrion admitted that Paroline has not been charged or convicted of any offense related to his investigation, but that he had issued a warrant for her arrest and has a hold on her while she is in custody in Texas. He also admitted that he had not talked with the victim and agreed that the victim would be the best one to say whether Paroline had permission to use the card.

In its punishment charge, the trial court instructed the jury that it was not to consider evidence of other crimes, wrongs, or bad acts for any purpose, unless it found beyond a reasonable doubt that Paroline committed the other crimes, wrongs, or bad acts. In its closing argument, the State emphasized the nature of the crime against Prewitt, Paroline's numerous prior offenses, and the fact that in the past, she had received various punishments of five years, ten years, and twenty months. It also pointed out that Paroline did not learn from her times in prison, but simply kept taking advantage of people, such as exploiting Prewitt. The State only made a one-sentence reference to Marrion's testimony in its argument, which consisted of four and one-half pages in the transcript.

As noted, the trial court instructed the jury to not consider Marrion's testimony unless they believed it showed beyond a reasonable doubt that Paroline committed a bad act. There is no indication in this record that the jury failed to follow the court's instructions, nor is there any evidence that the sentence received by Paroline was the result of Marrion's testimony. Further, the State barely mentioned the incident in its closing, focusing rather on the crime committed against Prewitt and Paroline's lengthy criminal history. Finally, the sentence received by Paroline was in the mid-range of the punishment available to be assessed by the jury. Because of the nature of the crime against Prewitt, and Paroline's criminal history, we have a fair assurance that any error in admitting Marrion's testimony had little or no effect on the punishment assessed by the jury. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We overrule Paroline's fifth point of error.

We affirm the judgment of the trial court.