**Opinion filed March 27, 2025**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-24-00026-CR & 11-24-00027-CR

_____

## EX PARTE AARON LOUIS TAFF

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause Nos. 24CVDC-00025 & 24CVDC-00026**

## O P I N I O N

Aaron Louis Taff was indicted in separate cause numbers for the offense of exploitation of an elderly individual.[1]  *See* TEX. PENAL CODE ANN. § 32.53 (West 2016).  In each case, Aaron filed an application for a pretrial writ of habeas corpus

---

[1]Sharon Marie Taff is charged with identical offenses.  Like Aaron, she sought pretrial habeas relief in each case and has appealed the trial court's denials of her applications.  As with Aaron's appeals, we have today affirmed the trial court's orders in a separate opinion.  *See Ex parte Sharon Marie Taff*, Nos. 11-24-00024-CR & 11-24-00025-CR (Tex. App.—Eastland Mar. 27, 2025, no pet. h.).

in which he challenged the facial constitutionality of Section 32.53, which provides in part, that a person commits an offense if "the person intentionally, knowingly, or recklessly causes the exploitation of a[n] . . . elderly individual." *Id.* § 32.53(b).[2] Specifically, Aaron asserted that the statute's definition of "exploitation"—which is "the illegal or improper use of a[n] . . . elderly individual, or . . . the resources of a[n] . . . elderly individual . . . for monetary or personal benefit, profit, or gain"—is unconstitutionally vague. *Id.* § 32.53(a)(2). The trial court denied Aaron's writ applications, and he appealed. Because we conclude that Section 32.53 is not unconstitutionally vague, we affirm the trial court's orders.

## I. *Standard of Review & Applicable Law*

A defendant may raise a facial challenge to the constitutionality of a statute that defines the offense charged through a pretrial application for a writ of habeas corpus. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). A facial challenge attacks the meaning of the statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). "Whether a statute is facially constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

A criminal law is unconstitutionally vague if it is not sufficiently clear to: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and (2) establish determinate guidelines for law enforcement. *State v. Doyal*, 589 S.W.3d 136, 146 (Tex. Crim. App. 2019). It is a basic principle of due process that a statutory enactment is void for vagueness if its prohibitions are not clearly defined. *Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018)

---

[2]Section 32.53 incorporates the definition of "elderly individual" found in Section 22.04(c) of the Texas Penal Code, which defines an "elderly individual" as a person who is sixty-five years of age or older. PENAL § 22.04(c) (West Supp. 2024).

(citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "A statute satisfies vagueness requirements if the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Id.* at 314 (quoting *Jordan v. De George*, 341 U.S. 223, 231–32 (1951)).

To resolve a facial challenge to the constitutionality of a statute, we focus "on the language of the statute itself rather than how it operates in practice." *McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (internal quotation marks omitted). We begin with the presumption that the challenged statute is valid, and that the legislature has not acted unreasonably or arbitrarily by enacting it. *Lo*, 424 S.W.3d at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended."). Many statutes have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286 (1945). Therefore, in the context of a vagueness challenge to a statute that does not regulate protected speech, a court should declare the statute unconstitutional only if it is impermissibly vague in all its applications. *Rosseau*, 396 S.W.3d at 557; *see also Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast

majority of its intended applications.'" (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960))).[3]

It is the challenger's burden to establish that the statute operates unconstitutionally in every application. *Lo*, 424 S.W.3d at 15; *see also Ex parte Vasquez*, 605 S.W.3d 248, 251 (Tex. App.—Austin 2020, pet. ref'd) (citing *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011)). In our review, we make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza*, 467 S.W.3d at 514.

## II. *Discussion*

Aaron[4] argues that Section 32.53 is unconstitutionally vague because defining "exploitation" as "the illegal or improper use" of an elderly individual or the individual's "resources" fails to adequately articulate what conduct is prohibited. Importantly, a statute is not unconstitutional merely because of its undefined terms. *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). Rather, a statute's words, phrases, or undefined terms are to be given their plain and ordinary meaning, read in the context in which they are used, and construed according to the rules of grammar and common usage. *Wagner*, 539 S.W.3d at 314 (citing *Bynum v.*

---

[3]*But see Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd) ("[R]ecent decisions by the United States Supreme Court and the Texas Court of Criminal Appeals indicate that when a penal statute is challenged for vagueness it is unnecessary to establish that the statute operates unconstitutionally in all possible circumstances.") (citing *Johnson v. United States*, 576 U.S. 591, 602–03 (2015)); *Doyal*, 589 S.W.3d at 144. Traditionally, if the challenge does not concern the First Amendment, the challenger "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau*, 396 S.W.3d at 557. Since the Fourth Court of Appeals decided *Jarreau*, it has imposed the "no-set-of-circumstances standard." *See State v. Flores*, 679 S.W.3d 232, 247–48 (Tex. App.—San Antonio 2023, pet. ref'd). While we discuss the constitutional applications of Section 32.53, we reach our conclusion based on the statute's fair notice and guidance standards. *See Doyal*, 589 S.W.3d at 146.

[4]The record does not show, and we cannot ascertain, the relationship between Aaron and Sharon, i.e., spouses, siblings, cousins, etc.

*State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989)); *see also* GOV'T § 311.011(a); *Mason v. State*, 663 S.W.3d 621, 634 (Tex. Crim. App. 2022). We utilize this method of statutory construction unless the statutory language is ambiguous, or its plain meaning leads to absurd results that the legislature could not possibly have intended. *Wagner*, 539 S.W.3d at 306 (citing *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)). We presume that every word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.*

A. *"Illegal or Improper"*

"Words defined in dictionaries and with meanings so well-known as to be understood by a person of ordinary intelligence are not considered vague and indefinite." *Mason*, 663 S.W.3d at 634. The term "illegal" is defined as "not according to or authorized by law," "unlawful," or "illicit." *Illegal*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/illegal (last visited Mar. 25, 2025). If an actor's conduct amounts to a separate offense under the Penal Code, such as theft as defined in Section 31.03, it logically follows that the actor's conduct is illegal. *See* PENAL § 31.03 (West Supp. 2024). The term "improper" is defined as "not in accord with propriety, modesty, good manners, or good taste," and "not in accord with fact, truth, or right procedure." *Improper*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/improper (last visited Mar. 25, 2025). Other sources define "improper" as "not in accordance with accepted standards, especially of morality or honesty." *Improper*, OXFORD DICTIONARY OF ENGLISH (2d rev. ed. 2005). Synonyms for the term "improper" include words such as "inappropriate," "incorrect," and "wrong." *Improper*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/improper#synonyms (last visited Mar. 25, 2025).

Aaron poses numerous hypothetical scenarios that purportedly illustrate Section 32.53's unpredictability and potential for arbitrary enforcement. He contends that Section 32.53 effectively exposes "anyone who influences an elderly family member to change a pay on death beneficiary designation or execute a will for the benefit of that family member to the exclusion of others" to criminal prosecution. He takes it a step further by suggesting that reasonable minds could differ over whether it is "improper for a 17-year-old to talk his elderly grandparent into purchasing him a brand[]new Ford F-350 that cost[s] $85,000." And in yet another hypothetical, he posits whether it is improper "for a person to comply with an elderly emphysema patient's request to take $20.00 . . . and go get him a pack of cigarettes." The impropriety, he continues, could be based on the belief that "an emphysema patient should not be smoking," or that it is "improper to charge the elderly emphysema patient $20.00 when the cigarettes only cost $8.00." In one scenario, Aaron deems it "[ir]relevant that [the] grandfather is of sound[]mind" in reaching the decision to purchase a Ford F-350 for the grandson.

The types of conduct and association that Aaron proffers as being subject to wrongful prosecution do not fall within the plain language of Section 32.53 when all statutory terms are properly given effect and construed in context. Instead, Aaron's hypotheticals apply each term in isolation rather than in the context in which they were used, and he completely ignores the statute's scienter requirement. *See Wagner*, 539 S.W.3d at 314.

Equally unavailing is Aaron's reliance on *Cuda v. State*, 639 So. 2d 22 (Fla. 1994). In *Cuda*, the Florida Supreme Court held that the terms "improper or illegal" as used in the Florida statute that prohibited financial exploitation of an aged or

disabled adult were unconstitutionally vague.[5]  639 So. 2d at 23–25.  The court cited the lack of other statutes "to lend meaning to the vague language employed" in the statute at issue and compared the statute to other similarly worded laws from other states: Louisiana, Washington, Illinois, North Carolina, and Texas.  *Id.* at 23–24. Since *Cuda*, several courts have distinguished it and upheld statutes that utilized the term "improper."  *See, e.g.*, *State v. Sailer*, 684 A.2d 1247, 1249–50 (Del. Super. Ct. 1995) (distinguishing *Cuda* while discussing a similar statute that defined "exploitation" as "the illegal or improper use or abuse of an infirm person, his resources or his rights, by another person, whether for profit or other advantage."); *see also Sanders v. City of Columbia*, 602 S.W.3d 288, 305 (Mo. App. W.D. 2020) ("[L]anguage prohibiting 'abusive or improper treatment' of a prisoner was not unconstitutionally vague or ambiguous, on its face or as applied."); *Foster v. State*, 937 So. 2d 742, 744 (Fla. Dist. Ct. App. 2006) (explaining that "the legislature's failure to define a statutory term, taken alone, does not render a provision unconstitutionally vague" and distinguishing *Cuda*).  We, too, find *Cuda* distinguishable, as we are not without guidance from the legislature and our sister courts regarding the constitutional applications of Section 32.53.

In denying Aaron's writ applications, the trial court cited *Cosper v. State*, 685 S.W.3d 196 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd), in which the Thirteenth Court of Appeals expressly applied the commonly understood dictionary

---

[5]The Supreme Court of Florida stated that the statute provided:

> A person who knowingly or willfully exploits an aged person or disabled adult by the improper or illegal use or management of the funds, assets, property, power of attorney, or guardianship of such aged person or disabled adult for profit, commits a felony of the third degree, punishable as provided in [Section] 775.082, [Section] 775.083, or [Section] 775.084.

*Cuda*, 639 So. 2d at 23 n.1 (quoting FLA. STAT. ANN. § 415.111(5) (West 1991)).

definition of "improper." Although *Cosper* is neither binding nor dispositive of the issue before us, we nevertheless find it to be instructive.

In *Cosper*, the court relied on one of the above dictionary definitions of "improper" in affirming a defendant's conviction for exploitation of an elderly individual. *Id.* at 204–06. Cosper met the victim, an eighty-six-year-old man with "'severe' dementia" and cognitive deficiencies, during her brief employment as the caregiver for the victim's wife. *Id.* at 204. In the months between Cosper's termination and the death of the victim's wife, the victim made several large cash withdrawals from a new bank account that he opened after meeting Cosper. *Id.* at 197–99. The evidence presented by the State showed that on one occasion, the victim withdrew $28,000, which Cosper used to buy a vehicle. *Id.* at 204. Sixteen days after the victim's wife died, Cosper and the victim married, and Cosper subsequently sought to have the victim deemed incompetent and committed. *Id.* at 199, 205. The court concluded that based on Cosper's "overall course of conduct," including "attempting to liquidate [the victim's] investment account," becoming a beneficiary to his will, and being given his medical and general powers of attorney, the jury could have rationally concluded that Cosper intended to "*improperly* influenc[e] [the victim] in his diminished capacity at the time he provided her with the funds to purchase the vehicle." *Id.* at 204–05.

Other decisions that we have found further reinforce our conclusion that the meaning of "improper" in the context of Section 32.53 "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Wagner*, 539 S.W.3d at 314 (quoting *Jordan*, 341 U.S. at 231–32); *see, e.g.*, *Paroline v. State*, 532 S.W.3d 491, 500–01 (Tex. App.— Texarkana 2017, no pet.). In *Paroline*, the defendant approached the victim in a

convenience store and asked him to put gas in her car. 532 S.W.3d at 500. The victim was in his mid-thirties and had been diagnosed in his early childhood with autism, mental retardation, and developmental disorder, among other mental deficiencies. *Id.* at 499. The victim agreed to allow the defendant to use his debit card, but only authorized the defendant to purchase five dollars of gasoline. *Id.* at 500. The defendant filled her vehicle's gas tank instead, then used the victim's debit card to withdraw cash and make other unauthorized purchases. *Id.* at 499–500, 502. In finding the evidence sufficient to sustain the defendant's conviction for exploiting a disabled individual, the Sixth Court of Appeals explained:

> [Paroline] exploited [the victim's] trusting naivete by telling him that she was attempting to put money into his account, all the while making purchases and obtaining cash until the maximum limit of his card was reached. Once there was no more advantage in using the card, Paroline abandoned him in the early morning hours at the Texarkana Walmart, miles away from his home.

*Id.* at 502. The court concluded that a person of ordinary intelligence would deem intentionally "taking advantage of people, such as exploiting" the disabled victim in *Paroline*, as constituting the illegal or improper use of a protected individual's resources. *Id.* at 503.

In *Joles v. State*, the defendant entered an eighty-two-year-old woman's home uninvited and told her he would repair her roof. No. 05-19-01324-CR, 2020 WL 7053504, at *1–2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op., not designated for publication). The victim did not know the defendant and told him to leave, but he refused. *Id.* Within the hour, the defendant convinced the victim to pay him $2,900 for repairs that he purportedly made to her roof, when the true value of any work performed was no more than $500. *Id.* at *1. On appeal, the defendant did not contest the sufficiency of the evidence to support his conviction, but instead

only challenged the trial court's admission of a prior conviction. 2020 WL 7053504, at *1–2. The Fifth Court of Appeals affirmed the defendant's conviction for exploiting the elderly victim. *Id.* at *3.

Finally, in *Vidakovic v. State*, the defendant befriended his elderly neighbor, who was diagnosed with Alzheimer's and dementia. No. 01-18-00443-CR, 2019 WL 1388363, at *1, *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op., not designated for publication). As the victim's cognitive function declined, the defendant "asked [the victim] to fund various projects and business ventures" with the promise to repay him. *Id.* at *1. Over a two-year span, the victim issued checks to the defendant exceeding $41,000 without receiving any reimbursement. *Id.* At trial and on appeal, the defendant contested the evidence that he knowingly "defrauded [the victim] by taking advantage of [his] age and diminishing mental capacity." *Id.* at *1–2. The defendant was convicted of the exploitation of an elderly individual and theft, and the First Court of Appeals affirmed his convictions. *Id.* at *1, *6.

Though the above cases do not conclusively establish the constitutional validity of Section 32.53, these cases illustrate the intrinsic understanding of criminal impropriety in the context of exploitation. In *Paroline* and *Vidakovic*, the dispute concerned evidence that showed the victim was disabled during the relevant timeframe. *Paroline*, 532 S.W.3d at 497–98; *Vidakovic*, 2019 WL 1388363, at *3. In *Cosper*, the defendant asserted that the State failed to prove that she improperly used the victim's resources because there was no evidence of who made the cash withdrawals, for what purpose(s) the funds were used, and that the funds were not community property. 685 S.W.3d at 203–04, 206. Based on the foregoing, we conclude that persons of ordinary intelligence would understand the unassailable

criminal impropriety of obtaining a protected individual's assets through some form of dishonesty, manipulation, deceit, coercion, or misrepresentation, or by otherwise taking advantage of the protected individual. *See Wagner*, 539 S.W.3d at 314. What constitutes "illegal or improper" conduct under Section 32.53 is also guided by the presumed knowledge of persons of ordinary intelligence.[6]

B. *"Use" and "Resources"*

We next turn to Aaron's contention that the undefined terms "use" and "resources" could conceivably encompass "anything and everything." The term "resources" is defined as "a stock or supply of money, materials, staff, and other assets that can be drawn on by a person or organization in order to function effectively," or "available assets." *Resources*, OXFORD DICTIONARY OF ENGLISH (2d rev. ed. 2005). "[U]se" is "variously defined as '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Dubin v. United States*, 599 U.S. 110, 118 (2023) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). The term "use" connotes "action and implementation," but "takes on different meanings depending on [the] context." *Id.* (quoting *Bailey*, 516 U.S. at 143, 145, 148–49). One widely accepted definition of "use" is, for instance, to "exploit (a person or situation) for one's own advantage." *Use*, OXFORD DICTIONARY OF ENGLISH (2d rev. ed. 2005).

In the context of Section 32.53, the illegal or improper *use* of a protected individual's *resources* points to a narrower reading that is centered around the ordinary understanding of taking advantage of another, more vulnerable member of society. PENAL § 32.53. In this regard, at the crux of criminality is the actor's

---

[6]While we are careful not to "engage in a free-floating extratextual inquiry to determine what [the] statute probably means," it is axiomatic that citizens are expected to know and abide by the law. *Doyal*, 589 S.W.3d at 149; *see* PENAL § 8.03(a) (West 2021) (ignorance of the law is not a defense).

intentional deceit or other form of dishonesty to obtain the assets of the elderly individual. PENAL § 32.53(a)(2), (b) (a person commits an offense if he or she *intentionally, knowingly, or recklessly* causes the exploitation—the illegal or improper use of an elderly individual or his or her resources *for monetary or personal benefit, profit, or gain*—of an elderly individual); *see Dubin*, 599 U.S. at 119–20.

Aaron utilizes both terms throughout his briefing in accordance with their established significance in the context of Section 32.53. In one hypothetical, he inquires whether it is "improper for a parent to use [a] child's resources to construct a barn or pen for the child's stock show animals," if the parent "benefit[s] from [an] increase [in] property value" and "the child also benefits from getting to participate in the stock show." Aaron also suggests that a seventeen-year-old rape victim who uses her "grandmother's resources to have an abortion" could be charged with exploitation under Section 32.53. Aaron's contextual application of the terms "use" and "resources" undermines his assertion of their alleged ambiguity. When read in context, we conclude that the plain meanings of the terms "use" and "resources" are commonly understood by persons of ordinary intelligence and provide sufficient guidance to law enforcement. *See Wagner*, 539 S.W.3d at 314. Consequently, and contrary to Aaron's assertion, those undefined words do not render Section 32.53 void for vagueness. *See id.*

C. *Section 32.53 Read as a Whole is not Facially Unconstitutional*

Despite Aaron's suggestion, a seventeen-year-old simply asking his parent or grandparent for a car, horse, barn, or other extravagant gift, alone, clearly falls outside the realm of punishable conduct under Section 32.53. Such a determination is necessarily fact-driven, and any "practical difficulty a factfinder may have in

12

ascertaining intent does not render a law unconstitutionally vague." *See Ex parte Ellis*, 309 S.W.3d 71, 89 (Tex. Crim. App. 2010). Rather, if the State fails to prove the necessary culpable mental state, then a defendant charged under this provision would be entitled to an acquittal. *Id.* at 90 (concluding that provisions of the Election Code are not facially unconstitutional due to vagueness). And although "[c]lose cases can be imagined under virtually any statute," whether a defendant obtained a benefit from the protected individual through dishonesty or deceit is a "true-or-false determination" that may be made by the factfinder. *See Williams*, 553 U.S. at 306 ("The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").

"[T]he law is full of instances where a man's fate depends on his estimating rightly [to] some matter of degree." *Johnson v. United States*, 576 U.S. 591, 604 (2015) (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)). "[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *Williams*, 553 U.S. at 306 (quoting *American Communications Assn. v. Douds*, 339 U.S. 382, 411 (1950)). "[T]o the extent that the statute is applied overzealously and unrealistically so as to charge an innocent [person]" with exploiting a protected individual, as Aaron suggests, such application may be challenged post-conviction on direct appeal through an "as applied" challenge. *See Ex parte Barrett*, 608 S.W.3d 80, 96 (Tex. App.—Dallas 2020, pet. ref'd) (citing *United States v. Thompson*, 896 F.3d 155, 168 (2nd Cir. 2018)); *see Broadrick v. Oklahoma*, 413 U.S. 601, 615–16 (1973) ("[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.").

We conclude that the improper use of a protected individual or the individual's resources under Section 32.53, when read in proper context, is not "such a non-numeric," "imprecise 'qualitative standard'" that would lead to unpredictable, arbitrary enforcement. *See Sessions v. Dimaya*, 584 U.S. 148, 159–162 (2018) (quoting *Johnson*, 576 U.S. at 603–04). Thus, because Section 32.53 provides fair notice of the prohibited conduct to persons of ordinary intelligence and adequate guidance to law enforcement, it is neither void for vagueness nor facially unconstitutional as Aaron contends. Accordingly, we overrule Aaron's issues on appeal.

## III. *This Court's Ruling*

We affirm the orders of the trial court.


W. STACY TROTTER
JUSTICE


March 27, 2025

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.